## TAVEL *v.* BECHTEL CORPORATION ET AL.

[No 231, September Term, 1965.]

300

*Decided April 26, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*Martin E. Gerel* for the appellant.

*Thomas E. Cinnamond* for the appellees.

OPPENHEIMER, J., delivered the opinion of the Court.

In this Workmen's Compensation appeal, the appellant-claimant, Tavel, was injured on a public highway while driving in his own car from his home to his place of employment; he contends that the injury occurred out of and in the course of his employment because, in addition to his hourly rate of pay, he was receiving a sum each week marked "travel time" on his pay checks, although the amount bore no relation to his actual travel expenses. The Workmen's Compensation Commission disallowed the claim, finding that the claimant did not sustain an accidental injury arising out of and in the course of his employment. Tavel appealed to the Circuit Court for Prince George's County and requested a jury trial. The record before the Commission was transmitted to the court. The appellee-employer, Bechtel Corporation, filed a motion for summary judgment, which Judge Bowie granted. This appeal ensued.

The facts adduced at the hearing before the Commission are undisputed. Tavel was employed as a truck driver by Bechtel, the appellee. He was hired on October 31, 1963 out of the Teamsters Union Hall in Washington, D. C. His assigned job site was located in Chaulk Point, Maryland, about 38 miles from his home in Brentwood, Maryland, and 27 miles from the District of Columbia. Tavel drove his own car to work. On the morning of April 16, 1964, while on the way to work, Tavel's car was forced off the road by an unidentified vehicle and he was injured. The accident occurred on a public county road approximately three-quarters of a mile from Bechtel's main gate.

Tavel was paid at an hourly rate which averaged $105 per week for a 40-hour week. He was also paid an additional $1.20 a day; this amount was not paid unless he actually reported to work. A section of an earlier agreement, effective from June 1961 to June 1963, between Tavel's union and the employer provided in part that "traveling expenses" were to be paid the employees in addition to their regular hourly rate of pay; the payments were set by zone rates of either eighty cents or $1.20 daily, dependent upon the distance of the job site from the District of Columbia. The distance from Tavel's home to the job site was more than 25 miles and therefore under the earlier agreement the rate of $1.20 applied. A new agreement was entered into between the union and Bechtel, effective June 30, 1963, in which no provision was made for the zone rate payments contained in the former agreement. Despite this omission, Bechtel, at the request of Potomac Electric Power Company for which it was performing the work, continued to make the daily payments to the truck drivers, including Tavel, employed by it. Tavel testified before the Commission that these daily amounts of $1.20 were travel pay and that their weekly aggregate of $6 was entered on the top of the check which he received and on the stub as "travel time."

Tavel did not claim that the daily $1.20 payments actually compensated him for the use of his vehicle. He testified that he used two tanks of gas each week in traveling to and from work. There was also, of course, the wear and tear upon his automobile.

At the hearing before the Commission, Bechtel's project administrative manager testified that the provision with respect to traveling expenses was put in the 1961 contract with the union to induce men from the District of Columbia to work in the Maryland plant. The allowance was based on the distance from the District of Columbia to the job site and had nothing to do with the actual mileage from the employee's house. The manager's understanding was that this was a fringe benefit "an additional allowance to induce the men to drive this distance rather than seek work in the District of Columbia, because we needed the men down there and it was difficult to get them." The additional payment was not based on mileage or time; if a man

lived next door to the job site he would still receive the $6 a week.

Tavel contends that whether the additional payments of $1.20 a day were to be considered as reimbursement for travel time or as additional compensation was an issue of fact which should have been submitted to the jury and that therefore the court below erred in granting a summary judgment in favor of the employer.

Where the terms and manner of employment are disputed and different inferences may be drawn therefrom, the issue is a mixed question of law and fact, to be determined by the trier of the facts, under proper instructions, but where the essential terms and manner of employment are undisputed, the question is one of law for the court. *Coates v. J. M. Bucheimer Co.*, 242 Md. 198, 218 A. 2d 191 (1966); *Lupton v. McDonald*, 241 Md. 446, 217 A. 2d 262 (1966), and *Clayburn v. Soueid, Inc.*, 239 Md. 331, 337, 211 A. 2d 728 (1965) and cases therein cited. The subjective interpretation of a party is not the test. See *Keyworth v. Industrial Sales Co.*, 241 Md. 453, 217 A. 2d 253 (1966).

In passing on questions of whether an employee, injured while coming to or going from the place where he worked, was injured in the course of his employment, this Court has endeavored to keep in mind both the legislative mandate that the Workmen's Compensation Act shall be so interpreted and construed as to effectuate its general social purpose and the concomitant consideration that workmen, like other members of the general public, are not insured against the common perils of life. Chief Judge Brune, for the Court, in *Maryland Paper Products Co. v. Judson*, 215 Md. 577, 583-89, 139 A. 2d 219 (1958), after analyzing the decisions, stated that cases dealing with the "coming and going" rule and modifications thereof must be determined upon their own facts.

This Court has in general adhered to the rule that the Act does not cover injuries received while going to or from work in public streets; the Act does not authorize an award in case of an injury from a peril to which the public at large is exposed. *Pariser Bakery & State Accident Fund v. Koontz*, 239 Md. 586, 590-91, 212 A. 2d 324 (1965) and cases therein cited.

However, as pointed out in *Maryland Paper Products, supra,* several exceptions to this general rule have been recognized. The exception here pertinent was discussed in that case as follows:

> "In *Harrison v. Central Construction Co.,* 135 Md. 170, 180, 108 A. 874, an employee was injured on his way to work while attempting to board a train on which transportation was provided by the employer, without expense to the employee. The court held the accident was one arising out of and in the course of the injured worker's employment. This conclusion was not altered on the second appeal when it was shown that the train in question was a regular passenger train operated by a common carrier, and not a special work train. *Central Construction Co. v. Harrison,* 137 Md. 256, 112 A. 627. Cf. *Watson v. Grimm, supra; Congressional Country Club v. B. & O. R. R.,* 194 Md. 533, 71 A. 2d 696." 215 Md. at 584.

In *Watson v. Grimm,* 200 Md. 461, 467, 90 A. 2d 180 (1952), it was stated that the exception applies "where the employer furnishes the employee free transportation to and from his work as an incident to the employment." In such cases, under the decisions of this Court and the weight of authority in other jursidictions, the making of the journey is part of the service for which the employee is compensated. 1 Larson, *Workmen's Compensation* § 16.20 (1965).

In this case, the additional payment of $1.20 a day bore no relationship to Tavel's actual travel expense. By any computation, the payment was only a small proportion of the actual expenses involved. The employer did not furnish the means of transportation nor pay its equivalent. The testimony is uncontradicted that the payment was made as an inducement to get men to work in the Maryland plant, as a fringe benefit. The same payment was made to employees who might live next to the employer's plant. That the payment was referred to on the pay check as "travel time" cannot alter its nature. The case does not come within the exception to the "coming and going" rule under the Maryland cases to which reference has been

made. The making of the journey was not part of the services for which the employee was compensated. He and his fellow employees were paid an arbitrary sum to induce them to make the journey where necessary, but, on the facts, that sum was additional compensation for service in the employer's plant, not reimbursement for the expense of getting there.

There are many cases in other jurisdictions in which the exception to the "coming and going" rule was held to apply, on the particular facts, to injuries received by an employee en route to or from work, when the employer, under an agreement to pay transportation, was paying a daily amount to cover the actual travel expense involved. *E.g. United States Fidelity & Guaranty Co. v. Donovan,* 221 F. 2d 515 (D. C. Cir. 1954); *Pribyl v. Standard Elect. Co.,* 246 Ia. 333, 67 N. W. 2d 438 (1954); *Callihan v. Fireman's Fund Indemnity Co.,* La. App., 110 So. 2d 758 (1959); *Pace v. Laurel Auto Parts, Inc.,* 238 Miss. 421, 118 So. 2d 871 (1960) (citing *Watson v. Grimm, supra*); *MacClelland v. Dodge Bros.,* 233 App. Div. 504, 253 N. Y. S. 773 (1931), *appeal dismissed* 259 N. Y. 565, 182 N. E. 183 (1932); *DePasquale v. John W. Cowper Co.,* 6 App. Div. 2d 909, 175 N. Y. S. 2d 833 (1958); *Micieli v. Erie R. R. Co.,* 130 N.J.L. 448, 33 A. 2d 586 (1943); *In re Jensen,* 63 Wyo. 88, 178 P. 2d 897 (1947). These authorities are based on factual variants of the *Watson* rule; they are not apposite to a situation such as is here involved where there was no agreement to pay the costs of transportation and where the amount paid had no relation to the actual cost.

The difference between payments which substantially cover the travel expense, made under an agreement to pay the cost of transportation, and payments which bear no relation to the actual expenses but are, in fact, additional compensation, is illustrated in four decisions: two in Illinois and two in Connecticut. In *Public Service Co. v. Industrial Comm'n.,* 370 Ill. 334, 18 N. E. 2d 914 (1938), the employer paid 67 cents a day to each of two employees who alternated in driving their cars to work. One of the employees was killed while on the way to work; the death was held not to have arisen out of or in the course of employment. In *Sjostrom v. Sproule,* 49 Ill. App. 2d 451, 200 N. E. 2d 19 (1964), *aff'd* 33 Ill. 2d 40, 210 N. E. 2d

209 (1965), the employer had agreed to pay the expenses of the employee in leaving the headquarters city; prior to the accident, the employee had ridden in a company car, but that car broke down, and the employer paid the employee 6 cents a mile for the use of a private car. The court held the injury sustained while in the private car arose in the course of employment; it found that the reimbursement for travel expense was real and not a form of extra compensation.

Larson, *supra,* summarizes the two Connecticut cases, *Swanson v. Latham,* 92 Conn. 87, 101 A. 492 (1917) and *Orsinie v. Torrance,* 96 Conn. 352, 113 A. 924 (1921) in § 16.30, as follows:

"A pair of Connecticut cases illustrate the distinction between a travel payment which converts the trip into part of the employment, and a transportation allowance which is in fact nothing but a small added compensation, with no evidence that the travel is sufficiently important in itself to be regarded as part of the service performed. In *Swanson v. Latham,* the employee lived in Willimantic, Conn., and was employed in Stafford Springs, Conn., and accordingly was given an extra 90 cents per day for transportation, which was in the form of a ride in a fellow-employee's car. An accident in the journey between the two towns was held compensable. But in *Orsinie v. Torrance,* the union contract had a blanket requirement that when employees lived beyond a single trolley fare the employer must add the cost of additional trolley fare to the wage. Claimant lived beyond the single-fare zone and was paid the extra amount. He was injured when, after waiting for a trolley, he attempted to cross the road to catch a ride with a truck. *Swanson v. Latham* was distinguished and compensation denied."

The only case which we have found which tends to support the appellant's contention on facts at all similar is a decision of the Supreme Court of Missouri, *Reneau v. Bales Elec. Co.,* 303 S. W. 75 (1957). With respect, we do not find it persuasive.

The appellant contends that the $1.20 a day may be taken as an average of the traveling expense of all the employees involved, and that, if so, the flat payment saved the employer administrative and direct expense. There is nothing in the record to support this contention.

On the undisputed facts and any inference which may be properly drawn from them, we find, as a matter of law, that Tavel's injuries did not arise out of and in the course of his employment, but were sustained as a result of a common peril, to which all persons are exposed. The court below properly granted the employer's motion for summary judgment.

*Judgment affirmed; costs to be paid by appellant.*