(No. 54079.—

COMMONWEALTH EDISON COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Patricia Aulich *et al.*, Appellees).

*Opinion filed October 21, 1981.—Rehearing*
*denied November 25, 1981.*

Rooks, Pitts, Fullagar & Poust, of Chicago (Douglas F. Stevenson, Robert K. Bush, and Marybeth S. Kinney, of counsel), for appellant.

Maurice W. Kepner, of Kepner & Giganti, of Springfield, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The claimants, Patricia Aulich, widow, and her three minor children, applied for workmen's compensation benefits on behalf of the decedent, Jerry Aulich, who was killed on his way home from working at the plant of his employer, Commonwealth Edison. At a hearing upon stipulated facts, the arbitrator awarded death benefits of $240.53 per week for 1,043 weeks, plus an additional week at $137.44. Additional evidence was presented before the Industrial Commission, which affirmed the decision of the arbitrator. The circuit court of Sangamon County confirmed the decision of the Commission. The employer has appealed.

The parties stipulated to the following facts. The decedent was employed by Commonwealth Edison as a maintenance electrician at the Kincaid plant and regularly worked from 7:30 a.m. to 4 p.m., Monday through Friday. He lived in Chatham, 20 miles from the plant—a 30-minute drive. On Sunday, October 2, 1977, he received a telephone call from the plant at about 7 a.m. requesting that he report to work immediately at the Kincaid plant to repair an elevator which was out of service.

The employee's compensation was controlled by a labor agreement which provided:

> "An employee called back (with or without previous notice) for work at any time outside of his regular work schedule, shall be paid a minimum of two hours straight time and a travel time allowance of two hours straight time pay. If pay for the time worked at the applicable overtime rate exceeds two hours straight time pay, the employee is to be paid at the applicable overtime rate for the hours worked and in addition will be paid the travel time allowance of two hours at straight time, unless the time worked amounts to eight hours or more, in which case no travel time allowance shall be paid."

The decedent started work at 8 a.m. and finished at 10:30

a.m. He left work in his own car and stopped to purchase gas. He was killed instantly at 11:12 a.m. when his car collided with a train at a railroad crossing 3½ miles from his residence. It is believed that decedent was on his way to the Christian Church to meet his family for church services and a noon "potluck" lunch. The accident occurred 1½ miles from the church.

> The employer challenges the Commission's finding: "That 2 hours travel time was intended to compensate the decedent for one hour's travel *to* work and one hour's travel *from* work. Therefore, compensation would begin on October 2, 1977 at 7:00 a.m. and end at 11:30 a.m., thus placing the accident *within* the period of compensation."

The employer argues that two hours' pay as a travel allowance under a labor agreement does not extend the employee's actual working time, so as to render compensable any accident occurring within such period. The employer posits that under the above-quoted findings of the Commission absurd results could be reached. For example, an employee living 10 minutes from the plant, after safely driving home, could be compensated for a fall in the shower. We agree that the Commission's findings are too broad in that an injury occurring after the employee had arrived home would not be compensable. However, the example given by the employer is not analogous to the facts in the present case.

In order for an injury to be compensable, it must be shown that the injury arose out of and in the course of the employment. Since, in the present case, the relevant facts are stipulated to by the parties, the basic question of whether the decedent's death arose out of and in the course of his employment is one of law.

The general rule is that an injury incurred by an employee in going to or returning from the place of employment does not arise out of or in the course of the employment and, hence, is not compensable. (*Hindle v.*

*Dillbeck* (1977), 68 Ill. 2d 309, 318; *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43.) An exception to this rule occurs when the employer agrees to compensate the employee for time spent traveling to and from work.

"When the employee is paid an identifiable amount as compensation for time spent in a going or coming trip, the trip is within the course of employment. This is a clear application of the underlying principle that a journey is compensable if the making of that journey is part of the service for which the employee is compensated. ° ° ° ° ° °

[A] demonstration that travel time was specifically paid for is one of the most reliable ways of making a case for the compensability of a going or coming trip, and is ordinarily sufficient in itself to support such a finding ° ° °." (1 A. Larson, Workmen's Compensation § 16.20 (1978).)

The above rationale supports that part of the Commission's decision holding that the employer's payment for two hours' travel time renders an injury occurring during either the trip to or from work compensable.

The employer contends that the decision of the Commission is contrary to this court's decision in *Public Service Co. v. Industrial Com.* (1938), 370 Ill. 334. In that case, the employee, Beckman, had lived and worked in Blue Island but was transferred to the employer's new plant in Niles Center. Because of the transfer, the employee "was allowed sixty-seven cents per day to cover the cost of transportation." (370 Ill. 334, 335.) The same arrangement was made with another employee. The two were driving from work together when an automobile collision occurred in which Beckman was killed. The court found that, since the employee was not directed to perform duties outside his usual place of business, the death did not arise out of or in the course of the employment. The court noted that the payment of 67 cents per day was "immaterial." 370 Ill. 334, 335.

We find, as did the Commission, that *Public Service Co.* is distinguishable from the case before us. Although proof of payment for *time spent in travel* is supportive of a conclusion that the travel itself is within the course of the employment, the same is not true for reimbursement for the *expense of travel.* Crucial to the determination is the question of whether the travel is sufficiently important in itself to be regarded as part of the service performed. In many cases, the payment of the expenses incurred in travel amounts to reimbursement for the expense of travel and is merely a form of added compensation; it does not bring the travel itself within the course of employment. (1 A. Larson, Workmen's Compensation § 16.30 (1978).) In *Public Service Co.,* the employee's travel to and from work was not sufficiently important to be regarded as part of the service performed. The 67-cents-per-day payment for the expense of travel was merely "to cover the cost of transportation" and, as such, amounted to reimbursement for the expense of travel. Therefore, death of the employee was not within the scope of employment as he traveled from work, and the injuries sustained in such travel were correctly found not to be compensable. Consequently, we find *Public Service Co.* not to be controlling.

Our research has revealed a number of jurisdictions which have examined factual situations similar to the case before us. We have found no case wherein compensation was denied. In each, the court held that an employer's payment for time an employee spends in travel to and from the job renders an injury sustained during such travel compensable. For example, in *Kobe v. Industrial Accident Com.* (1950), 35 Cal. 2d 33, 215 P.2d 736, three employees sought compensation for injuries sustained in an automobile accident which occurred while returning home from work. Under a union contract the employer paid "travel time to employees who traveled back and forth each day to jobs

over fifteen miles distance from the employer's place of business." (35 Cal. 2d 33, 34, 215 P.2d 736, 736.) It was a common practice to pay the employee one hour's extra pay instead of computing the exact number of minutes actually incurred in such travel. In holding that the "travel time" payment rendered the injuries compensable, the court reasoned:

> "[T]he employer may agree, either expressly or impliedly, that the relationship shall continue during the period of 'going and coming,' in which case the employee is entitled to the protection of the act during that period. *** It seems equally clear that such an agreement may also be inferred from the fact that the employer compensates the employee for the time consumed in traveling to and from work." *Kobe v. Industrial Accident Com.* (1950), 35 Cal. 2d 33, 35, 215 P.2d 736, 737.

See also the following cases in which the payment of travel time rendered the injuries incurred in such travel compensable: *Continental Casualty Co. v. Thompson* (1973), 130 Ga. App. 270, 202 S.E.2d 835 (under a union contract the employer was required to pay one hour's wages for travel when it did not furnish transportation to and from jobsites outside of the county); *Livingston v. State Industrial Accident Com.* (1954), 200 Or. 468, 266 P.2d 684 (the employee was paid for 15 minutes travel time from the job site to camp); *Serrano v. Industrial Com.* (1953), 75 Ariz. 326, 256 P.2d 709 (under an agreement with the union, the employer paid an "allowance for travel and subsistence expense" in the amount of one hour's pay at the employee's straight-time rate).

In the present case, compensation for travel time was paid under the union contract only when the duty involved work outside the normal workweek and, then, only when the overtime work constituted less than a total of eight hours. Obviously, this provision was designed to attract a worker to come to the worksite for a short period of time on

the employee's day off. The compensation paid to the decedent under the labor agreement, which amounted to a two-hour straight-time minimum, cannot be classified as merely reimbursement for the expense of travel, but must be categorized as compensation equal to two hours' pay for time spent in travel. It was a beneficial tool of the employer and constituted an implied agreement to make such travel part of the employment. We therefore find the death of Aulich to be one arising out of and in the course of his employment in that it occurred on his trip from the plant to his home.

The Commission also found Aulich's going to church rather than going directly home was not a substantial deviation rendering his trip without the course of his employment. His plan to stop at church on a Sunday morning was not only foreseeable but could be reasonably anticipated by the employer. On this issue, we find the decision of the Commission not to be against the manifest weight of the evidence.

We therefore affirm the judgment of the circuit court of Sangamon County.

*Judgment affirmed.*

MR. JUSTICE SIMON, dissenting:

The characterizations found in the collective bargaining agreement make the majority opinion a persuasive one, but it overlooks some of the agreement's significant provisions. Although described in the agreement as a "travel time allowance," the extra pay which the employees in the position of the claimant's husband received and on which the majority decision is based had nothing to do with travel. The employees were not paid for either the *time* or the *expense* of commuting. Thus, the authorities which the court cites to uphold the Commission are not helpful in dealing with this case; they involve different factual situations.

The collective bargaining agreement provided that employees who, like the decedent here, reported directly to their work area traveled "to such work location on their own time and at their own expense." The provision the majority relied on did not render this section of the agreement inconsequential for the purposes of this case, because that provision was about compensation, not travel. Both provisions could be, and should have been, read *in pari materia*—the first to determine if the decedent's travel was in the course of his employment, the second to determine how much pay the decedent had earned.

The compensation provision set a compensation floor—a "safety net"—for employees who were called in to work outside their normal hours. The amount of the minimum varied according to a sliding scale:

| If the employee worked: | The employee received: |
| --- | --- |
| —Less than two straight time hours as measured by overtime pay, | —Two hours straight time pay *plus* a travel allowance of two hours straight time pay. |
| —More than two straight time hours but less than eight, as measured by overtime pay, | —The overtime rate for actual hours worked *plus* a travel allowance of two hours straight time pay. |
| —More than eight hours, | —The overtime rate for actual hours worked *without* a travel allowance. |

It bears emphasis that the employee who ended up working more than eight hours received *no* "travel time allowance."

The record gives no clue as to why the agreement characterized the extra pay as a "travel time allowance" when in fact the pay was unrelated to travel; under the circumstances it is misleading to reach a decision on the basis of that characterization. Some employees got the extra pay while others who traveled the identical distance in identical time did not. The balance hung not on the travel

distance or travel time, but on the length of time spent at the plant. No employee called in to work outside of normal schedules could count on being reimbursed for travel, since only when the work was completed and the number of hours the employee had worked was known could the employee determine if the allowance would be paid. The decedent, for example, did not know on the morning of the accident how long he was going to work. What he was entitled to receive was not, therefore, a "travel time allowance."

The workers did not receive pay for the time or expense of traveling; instead they were paid bonuses for the disruption of their personal schedules. As the court notes, the company assured them of a minimum amount of pay if they came into work on their day off, no matter how little work had to be done. Once that minimum was earned, the bonus was eliminated, just as the premium paid under the agreement to employees for work performed on Sundays was eliminated if the employee was receiving overtime.

In *Tavel v. Bechtel Corp.* (1966), 242 Md. 299, 219 A.2d 43, the employer paid the claimant $1.20 per day and called it, as did Commonwealth Edison here, compensation for "travel time." In fact, the payment was a fringe benefit used to induce out-of-State workers to come to work for the employer, with no relation to the actual cost of or time spent in traveling. Compensation was denied for an employee injured in an automobile accident on his way to work; the court held that the journey was not part of the services for which the employee was hired. Like the court in *Tavel,* this court should not feel bound by the way the parties characterized the compensation. To the extent that the Industrial Commission found as a matter of fact that the pay was compensation for the time spent in traveling, its conclusion was contrary to the manifest weight of the evidence, for all the evidence supports only the opposite conclusion.

With the evidence viewed realistically instead of through the distortion created by the language employed in the agreement, I see no basis for holding the employer liable. Illinois cases have held that, unless the employee is on a special errand for the employer, the liability of the employer ceases when the employee has left the premises. (*Public Service Co. v. Industrial Com.* (1938), 370 Ill. 334, 335; *Warren v. Industrial Com.* (1975), 61 Ill. 2d 373.) Under the terms of the agreement, the deceased here was not killed on company time. He was on no special errand because travel was not a substantial part of the service the Industrial Commission determined he performed. He had left work and was about his own business. Cases like *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, have found an accident arising out of the course of employment only because the accident occurred during travel which was due to the exigencies of the job and was under the control of the employer. No such exigencies or control appear in this case.

A recovery against the employer of $252,760.23 for what was an ordinary, though tragic, automobile accident was not justified. I therefore respectfully dissent.