663 A.2d 578

**Joyce A. MORRIS et al.**

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY.**

No. 13, Sept. Term, 1995.

Court of Appeals of Maryland.

Aug. 22, 1995.

Richard A. Finci (Houlon & Berman, on brief), New Carrollton, for appellants.

Andrew W. Nussbaum (Reichelt, Nussbaum, LaPlaca & Miller, on brief), Greenbelt, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

The sole question presented is whether the circuit court properly determined that Joyce A. Morris did not sustain an accidental personal injury arising out of and in the course of her employment, which was compensable under Maryland Code (1957, 1991 Repl.Vol.) § 9–101 *et seq.* of the Labor and Employment Article (the Workers' Compensation Act or the Act).[1]

I.

The basic facts of this case are undisputed. On January 9, 1991, Morris died as a result of injuries she sustained in an automobile accident, which occurred in Fairfax County, Virginia. At the time of the accident, Morris was operating her own vehicle while en route to her job in Maryland as a speech pathologist for the Prince George's County Board of Education (the Board), a position she had held for approximately twenty years. Morris was scheduled to report to work between 7:15 and 7:30 a.m. on January 9; the accident occurred at approximately 6:45 a.m. when she was only about three or four miles from her home in Chantilly, Virginia. Morris was not performing any of her designated job responsibilities for the Board at the time of the accident.

In determining an individual's employment status, the Board divides the five day work week into ten half-day segments; a full-time employee maintains a ten-tenths schedule, while a part-timer works some amount less than that. On the date of the accident, Morris, by her own choice, was employed part-time on a six-tenths basis. Part-time speech pathologists design their own schedules based upon the num-

---

1. Unless otherwise indicated, all statutory references are to the Labor and Employment Article.

ber of hours they want to work per week. They are free to determine both the number and the particular days they will work, subject to approval by the principal of their assigned school(s).

For the 1990–1991 school year, Morris's job responsibilities involved providing speech therapy services at two schools, Tayac and Rose Valley Elementary Schools, which are located less than five minutes apart by automobile in Prince George's County.[2] It was Morris's task to decide how to divide her time between the two places. She did so by assessing the needs of the children requiring speech therapy and preparing a weekly schedule based on those needs, which was reviewed and approved by her supervisor. According to the schedule Morris developed, she worked three full days a week, spending half of each day at each of her assigned schools. Morris could have arranged a schedule in which she traveled to only one school per day if she had, for example, planned to work a full day at each of her schools and then spent an additional half day at each one. According to testimony, Morris never requested to be assigned to only one school.

The Board did not provide transportation for speech pathologists assigned to more than one school. It also did not assist employees in financing the purchase of vehicles to be used for travel between schools nor did it pay for these vehicles' maintenance, fuel, or repair. Furthermore, the Board did not specify the type of vehicle to be driven, where its employees should live, or what route should be taken to and from work. The Board did provide reimbursement for business mileage; however, compensation for travel between home and the "base" school was not included.[3] Finally, the Board did not

---

2. During that year, the Board employed 81 speech pathologists in 76.8 positions. Thirty-six were assigned to one school, 25 to two schools, and 13 to three schools.

3. The Board's mileage reimbursement policy states:
   "School-based professional personnel who are regularly required to travel between schools will be assigned ... a school for the basis of computing mileage."

specifically require its employees to have automobiles nor was there anything in the job description of a speech pathologist that indicated that this was a condition of such employment.

On December 13, 1991, Morris's husband filed a claim with the Workers' Compensation Commission (the Commission) on her behalf. On December 17, 1992, the Commission determined that Morris did in fact sustain an accidental injury arising out of and in the course of her employment, which caused her death, and awarded partial dependent benefits to her two minor children. The Board appealed to the Circuit Court for Prince George's County and, after the parties' cross-motions for summary judgment were denied, a non-jury trial was held.[4] On July 15, 1994, at the conclusion of the presentation of evidence, the court (Sothoron, J.) reversed the Commission's earlier decree, determining that the injuries causing

"The base school for mileage purposes will be one of the schools to which the individual is regularly assigned. Insofar as possible, such personnel should be assigned to schools within a cluster and the cluster should be the one closest to the individual's home if requested by the employee. The number of miles this school is located from the individual's home will be considered commuting mileage. Mileage reported for the reimbursement each day will be the number of miles driven during the day minus twice the distance from home to the designated school. The normal trip between home and the designated school will be deducted from the daily mileage whether the individual goes to the designated school that day or not."

4. Section 9–409 states: "An employer may appeal any decision of the Commission ... to the circuit court for the county in which the employer resides." In such a proceeding, "the decision of the Commission is presumed to be prima facie correct; and ... the party challenging the decision has the burden of proof." § 9–745(b). Maryland, like sixteen other states, authorizes a review of the facts as well as the law in workers' compensation cases, providing for a trial that is essentially *de novo;* the circuit court must determine whether the Commission "(1) justly considered all of the facts about the accidental personal injury ...; (2) exceeded the powers granted to it ...; or (3) misconstrued the law and facts applicable in the case decided." § 9–745(c). *See also Mitchell v. Goodyear Service Store,* 306 Md. 27, 33, 506 A.2d 1178 (1986); *Trotta v. County Car Center,* 292 Md. 660, 662, 441 A.2d 343 (1982); *Frank v. Baltimore County,* 284 Md. 655, 658, 399 A.2d 250 (1979); *Md. Bureau of Mines v. Powers,* 258 Md. 379, 382–83, 265 A.2d 860 (1970); *Abell v. Goetze, Inc.,* 245 Md. 433, 437, 226 A.2d 253 (1967).

Morris's death did not arise out of and in the course of her employment. It distinguished the facts of the instant case from those in *Alitalia v. Tornillo,* 329 Md. 40, 617 A.2d 572 (1993), concluding that the own conveyance exception to the going and coming rule set forth in *Alitalia* did not apply in the case before it. Prior to intermediate appellate review, we granted certiorari to consider the important issue raised in this case.

## II.

■ Under Maryland's Workers' Compensation Act, "each employer of a covered employee shall provide compensation ... to ... the dependents of the covered employee for death of the covered employee ... resulting from an accidental personal injury sustained by the covered employee[.]" § 9–501(a). An "accidental personal injury" is one that "arises out of and in the course of employment." § 9–101(b)(1). *See Alitalia, supra.* We have held:

" 'The words "out of" and "in the course of" employment as used in the Workmen's Compensation Act are not synony-mous....' When both conditions are satisfied, the injury is within the operation of the Act.... '[I]n the course of employment' ... refers to the place, time and circumstances under which the accident resulting in the injury or death occurs, [while] '[arising] out of the employment' refers to the cause or origin of the accident."

*Knoche v. Cox,* 282 Md. 447, 453–56, 385 A.2d 1179 (1978) (quoting *Pariser Bakery v. Koontz,* 239 Md. 586, 590, 212 A.2d 324 (1965)). *See also Hastings v. Mechalske,* 336 Md. 663, 677–78, 650 A.2d 274 (1994).

■ It is well settled that injuries sustained by an em-ployee while going to and coming from work are generally not considered to arise out of and in the course of employment and are, therefore, not compensable under the Act. *Alitalia, supra,* 329 Md. at 44, 617 A.2d 572. *See also Board of Trustees v. Novik,* 326 Md. 450, 453, 605 A.2d 145 (1992); *Wiley Mfg. Co. v. Wilson,* 280 Md. 200, 206, 373 A.2d 613

(1977); *Saylor v. Black & Decker Mfg. Co.*, 258 Md. 605, 607–08, 267 A.2d 81 (1970). This is because getting to work is considered to be an employee's own responsibility and ordinarily does not involve advancing the employer's interests. *Oaks v. Connors*, 339 Md. 24, 660 A.2d 423 (1995). Moreover, the hazards encountered by an employee while commuting to work are common to all workers, no matter what their job, and, hence, such risks cannot be directly attributable to a person's particular employment. *Novik, supra*, 326 Md. at 453, 605 A.2d 145. *See also Salomon v. Springfield Hospital*, 250 Md. 150, 154, 242 A.2d 126 (1968) (stating that "traveling upon ... busy streets ..., while it does entail some degree of danger, does not subject an employee traveling to and from work, to a greater degree of danger than he would be exposed to as a member of the general public"); *Tavel v. Bechtel Corporation*, 242 Md. 299, 303, 219 A.2d 43 (1966) (explaining that "workmen, like other members of the general public, are not insured against the common perils of life"). This principle is known as the "going and coming rule" and is subject to several exceptions.[5] *Alitalia, supra*, 329 Md. at 44, 617 A.2d 572.

Appellant Morris argues that the circuit court erred when it determined that the injury to his deceased wife did not arise out of and in the course of her employment because the circumstances of the accident were such as come squarely within the own conveyance exception to the going and coming

---

5. Some of these exceptions include:

"where the employer furnishes the employee free transportation to and from work, the employee is deemed to be on duty, and an injury sustained by the employee during such transportation arises out of and in the course of employment. Compensation may also be properly awarded where the employee is injured while traveling along or across a public road between two portions of the employer's premises. The 'proximity' exception allows compensation for an injury sustained off-premises, but while the employee is exposed to a peculiar or abnormal degree to a danger which is annexed as a risk incident to the employment. Injuries incurred while the employee travels to or from work in performing a special mission or errand for the employer are likewise compensable."

*Alitalia, supra*, 329 Md. at 44, 617 A.2d 572 (citations omitted).

rule set forth in *Alitalia, supra.* He contends that *Alitalia* held that where an employee is required, as a condition of employment, to have a personal vehicle available for use during the work day in order to fulfill the employer's business purposes, the employee's commute to work is within the scope of employment. Morris maintains that the Board's failure to provide transportation to speech pathologists assigned to more than one school amounts to an implicit requirement that such employees have a vehicle available for any necessary travel.

Each case involving the going and coming rule and its exceptions turns on its own particular facts. *Alitalia, supra,* 329 Md. at 46, 617 A.2d 572; *Wiley Mfg., supra,* 280 Md. at 216, 373 A.2d 613; *Saylor, supra,* 258 Md. at 610–11, 267 A.2d 81 (stating that " '[n]o exact formula can be laid down which will automatically solve every case' "). Our holding in *Alitalia,* in which compensable injuries were found to have been sustained by an employee in an accident that occurred while the employee was driving home in a car specifically required for use in his employment, was based upon the specific facts of that case, facts that are readily distinguishable from those in the case now before us.

In *Alitalia,* Tornillo, the injured employee, was a passenger sales representative for Alitalia, an Italian air carrier. His primary business-related responsibilities included selling tours and travel packages to travel agencies, visiting existing clients, distributing promotional materials to attract new customers, servicing his accounts by telephone from the company's Washington, D.C. office, attending weekly sales meetings, and running occasional errands for his employer, all of which required him to travel throughout the Maryland–Virginia area on a daily basis. Tornillo sometimes made sales calls on his way to and from his home in Rockville.

Furthermore, after approving Tornillo's choice of vehicle, Alitalia made him a $7,000 interest-free loan to assist him in purchasing a new Toyota Celica sedan, which was to be used to fulfill the conditions of his employment. Tornillo was reimbursed with a travel allowance for his business mileage;

however, this allowance did not cover travel from home to the D.C. office for the weekly sales meetings. Finally, Alitalia explicitly required Tornillo to have a car for his job and to bring it to work each day for use in his employment. *Alitalia, supra,* 329 Md. at 42, 617 A.2d 572. In keeping with these facts, we held that

> "Alitalia's requirement that Tornillo, as a condition of his job, have the car available during the work day, placed his drive home from the office within the scope of his employment. His underlying obligation to have the car, to bring it to the office, and to have it ready for sales calls or company errands naturally carried with it the practical necessity of commuting between home and work. . . . His employment as an outside sales representative, who was required by Alitalia to own and use the Toyota for business purposes, encompassed his drive from home to work and back again."

*Id.* at 45–46, 617 A.2d 572.

To the contrary, the facts in the instant case demonstrate that Morris was not required, as a condition of her employment, to have a vehicle available to fulfill her job responsibilities. The Board neither expressly ordered Morris to provide her own vehicle for use during the work day nor did the job description of a speech pathologist suggest that such a condition existed. Her sole duties as a speech pathologist involved providing speech therapy services to Prince George's County children in need. While driving to and from her base school, Morris was not executing any of her job-related functions nor was she furthering any business purpose of the Board. Moreover, Morris's accident occurred at 6:45 a.m., at least 30 minutes before she was to report for work at her base school.

Furthermore, Morris's use of her own car to commute to work was primarily for her own convenience and to accommodate her own needs and desires, not to further the Board's interests. She made the decision to work on a six-tenths basis. She set up her schedule in such a way that she had to travel between two schools every day. She never requested to

be assigned to only one school. In addition, driving her own car to work was not sufficiently integral to the fulfillment of her duties as a speech pathologist to be regarded as part of the service she performed for the Board.

Finally, the Board exerted no control over the method or means by which Morris operated her personal vehicle. It did not provide or help finance the purchase of the car she used nor did it pay for its maintenance, fuel, or repair. Moreover, the Board did not tell Morris what kind of car to drive, where she should live, or what route she should take to and from work. It did reimburse Morris for her business mileage, i.e., for her travel between schools; however, Morris was not compensated for her commute between her home and her base school.

The circumstances of the instant case also do not satisfy the underlying rationale for which the own conveyance exception was created. In *Alitalia,* we stated:

"The theory behind this rule is in part related to that of the employer-conveyance cases: the obligations of the job reach out beyond the premises, make the vehicle a mandatory part of the employment environment, and compel the employee to submit to the hazards associated with private motor travel, which otherwise he would have the option of avoiding.... [I]n addition there is at work the factor of making the journey part of the job, since it is a service to the employer to convey to the premises a major piece of equipment devoted to the employer's purposes."

329 Md. at 46–47 (quoting 1 Arthur Larson, *The Law of Workmen's Compensation* §§ 17.51–17.52 (1992) (footnote omitted)). The evidence in this case shows that it was Morris's personal decision to 1) live in Virginia and work in Prince George's County and 2) split her days between two schools instead of working at one per day, which exposed her to the hazards associated with private motor travel, not her job as a speech pathologist itself. In addition, the notion that an employee, who is required to bring a car to work, is compelled to accept the risk of private as opposed to public transporta-

tion is particularly inapplicable in this case. The record before us shows that it would have been virtually impossible for Morris to have traveled to work by any means other than her own private vehicle. Commuting by public transportation would not have been a viable option for her even if she had been assigned to only one school because the evidence reveals that the earliest that Morris could have arrived in Ft. Washington (the location of her assigned schools) using public transportation was at 8:05 a.m.; however, she was required to arrive at work each day between 7:15 and 7:30 a.m. Therefore, nothing in the record supports the suggestion that she would have traveled to work by public transportation but for the fact that she was servicing two schools during her work day. In addition, by driving her own car to work, Morris was not conveying to her employer's premises a major piece of equipment devoted to its purpose. The Board hired Morris to provide speech therapy services to students in its school system; her car was not an essential tool in performing this task, as, for example, it was for the outside sales representative in *Alitalia*.

■ Finally, while the Workers' Compensation Act is construed liberally in favor of the injured employee, this principle does not mandate the payment of benefits beyond that authorized by the Act's provisions and purpose. *Alitalia, supra,* 329 Md. at 48, 617 A.2d 572. *See also Montgomery County v. McDonald,* 317 Md. 466, 472, 564 A.2d 797 (1989); *Subsequent Injury Fund v. Thomas,* 275 Md. 628, 635, 342 A.2d 671 (1975); *Tavel, supra,* 242 Md. at 303, 219 A.2d 43; *Huffman v. Koppers Co.,* 94 Md.App. 180, 184–85, 616 A.2d 451 (1992), *aff'd per curiam,* 330 Md. 296, 623 A.2d 1296 (1993). As noted earlier, however, workers' compensation cases must always turn on their own individual facts. Accordingly, we hold that the circumstances of this particular case do not support a conclusion that the Board *required* Morris, as a condition of her employment, to have a vehicle available for use in her employment; therefore, the own conveyance exception to the going and coming rule does not apply here and Morris's

injuries, sustained while en route to her base workplace, are not compensable under the Act.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED, WITH COSTS.*