# Illinois Official Reports

## Appellate Court

***Pryor v. Illinois Workers' Compensation Comm'n*, 2015 IL App (2d) 130874WC**

| | |
|---|---|
| Appellate Court Caption | LANYON PRYOR, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Cassen Transport, Appellee). |
| District & No. | Second District<br>Docket No. 2-13-0874WC |
| Filed | February 20, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a claim for the lower back injury a truck hauler suffered while loading his personal suitcase into his private car in preparation for his drive to his employer's terminal to pick up his car-hauling truck to start delivering cars to various dealerships, the arbitrator's findings that claimant failed to prove that he suffered an accident that arose out of and in the course of his employment, that he was not acting as a "traveling employee" when he was injured, and that his injuries were not causally connected to his employment were affirmed by the Workers' Compensation Commission based on the conclusions that the risk resulting in claimant's injury was a personal risk, not a risk peculiar to his work, and that claimant had not started his travel for work when he was injured, and the appellate court upheld the Commission's decision on the ground that the finding that claimant's injury did not arise out of or in the course of his injury was not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 12-MR-821; the Hon. J. Edward Prochaska, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Brad A. Reynolds, of Gesmer Law Offices, P.C., of Rockford, for appellant. |
|---|---|
| | Sam J. Cerniglia and Maria Merman, both of Roddy, Leahy, Guill & Zima, Ltd., of Chicago, for appellee. |

| Panel | PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Hoffman, Hudson, Harris, and Stewart concurred in the judgment and opinion. |

## OPINION

¶ 1    The claimant, Lanyon Pryor, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2008)), seeking benefits for an injury to his lower back which he sustained on July 21, 2008, while he was employed by Cassen Transport (employer). After conducting a hearing, an arbitrator found that the claimant had failed to prove that he sustained an accident that arose out of and in the course of his employment. In so ruling, the arbitrator rejected the claimant's argument that he was acting as a "traveling employee" at the time he was injured. The arbitrator also found that the claimant failed to prove that the injuries he sustained, if any, were causally connected to his employment.

¶ 2    The claimant appealed the arbitrator's decision to the Illinois Workers' Compensation Commission (Commission), which unanimously affirmed and adopted the arbitrator's decision. The Commission found that the risk which resulted in the claimant's alleged injury was a personal risk that was "not sufficiently connected to [his] employment in order to be a risk peculiar to his work." Moreover, like the arbitrator, the Commission also found that the claimant's "travel for work had not yet begun when the accident occurred."

¶ 3    The claimant then sought judicial review of the Commission's decision in the circuit court of Winnebago County, which confirmed the Commission's decision. This appeal followed.

¶ 4                                    FACTS

¶ 5    The employer delivers new automobiles to various car dealerships for Chrysler. The claimant works for the employer as a car hauler. His responsibilities include loading automobiles onto an 18-wheel car-hauling truck at the employer's terminal in Belvidere, Illinois, driving the truck to various dealerships, and unloading the cars at those dealerships. Sometimes the claimant picks up vehicles on his return trip, loads them on the truck, and delivers them to another location on his way back to Belvidere. The claimant usually drives his personal vehicle from his home to the employer's Belvidere terminal and back.

¶ 6      One to two nights per week, the claimant spends the night at a hotel while he is on the road delivering cars to dealerships. The employer provides each car hauler with a list of motels so he can book an overnight stay at one of those hotels while he is on the road. When the claimant anticipates that he will be staying overnight at a hotel, he packs a suitcase with a change of clothes. The claimant usually drives to the employer's terminal in his personal vehicle, takes the suitcase out of his vehicle, and puts it into an 18-wheeler. He then loads the 18-wheeler with cars and drives it to the various dealerships where he delivers the cars.

¶ 7      On July 21, 2008, the claimant arose at 4 a.m. to get ready for work. He testified that he planned to drive to the Belvidere terminal that morning to "start [his] work." Because he anticipated being out of town overnight for work that evening, the claimant packed a suitcase with a change of clothes and other items for the trip. The claimant carried the packed suitcase to his personal car, opened the car door, reached down to pick up the suitcase, and "bent and turned to the back seat of the car." At that moment, the claimant felt an "unbearable" pain through his back and down his legs which caused him to drop to his knees. The claimant stated that he had to "crawl into [his] house screaming for [his] wife" because he "thought [he] was paralyzed."

¶ 8      Later that day, the claimant's wife drove the claimant to his chiropractor, Dr. Irshad Kassim. Dr. Kassim's July 21, 2008, treatment record reflects that the claimant reported "severe," "sharp," and "burning" pain in his lower back radiating into his right leg. The claimant rated the pain as a 10 on a scale of 0 to 10. Dr. Kassim's treatment record notes that "since his last visit, [the claimant's] lower back pain has been worse."[1] The claimant reported feeling a sharp burning pain in his lower back "while he was picking up a suitcase to go to work." Dr. Kassim noted that the claimant was "acutely inflamed and needed assistance to walk." The doctor recommended that the claimant go to the emergency room. He also noted that the claimant should "continue with the prescribed home care."

¶ 9      The claimant's wife then drove him to the emergency room at St. Alexis Hospital. At the emergency room, the claimant was given an injection for pain relief and told to follow up with his family doctor, Dr. Pocholo Florentino. On July 23, 2008, Dr. Florentino examined the claimant and ordered an MRI, which revealed disc bulging at L2-L5. The following day, Dr. Florentino reexamined the claimant and prescribed medication and physical therapy. During the initial physical therapy session, the therapist instructed the claimant in a home exercise program.[2] After performing these exercises at home, the claimant returned to Dr. Florentino, who released the claimant for work as of August 18, 2008. The claimant returned

---

[1]The claimant had been treating with Dr. Kassim for lower back pain beginning on July 15, 2008. The claimant testified that this pain was triggered when he strained his back at work on July 10, 2008, while chaining a car onto a car-hauling truck. However, Dr. Kassim's July 15 and 17 medical records do not make any note of a work-related accident, and the claimant did not report a work-related injury to the employer until July 25, 2008. The claimant testified that he did not think that the July 10, 2008, work injury was serious and he was hoping to resolve it without involving the employer and without missing time at work. The claimant's alleged July 10, 2008, work injury was the subject of a separate claim. Although that claim was consolidated with the instant claim, the arbitrator issued a separate decision addressing the former claim which is not included in the record.

[2]The claimant did not undergo any additional physical therapy sessions because he was denied insurance coverage for those sessions.

to work on that date. During the arbitration hearing on March 14, 2011, the claimant testified that his lower back was "fine."

¶ 10    The claimant testified that he never had lower back pain before July of 2008. However, Dr. Kassim's June 4, 2005, medical record indicates that, "[o]n this visit, [the claimant] stated that he was experiencing constant mild to moderate lower back pain which was sharp in quality." According to Dr. Kassim's June 4, 2005, medical record, the claimant's pain was radiating into his left leg, and the claimant rated the pain as a 5 on a scale of 0 to 10. Dr. Kassim diagnosed the claimant with "lumbar somatic dysfunction" and sciatica and prescribed biweekly chiropractic treatments. Dr. Kassim's June 10, 2005, medical record reflects that, although the claimant's lower back pain was getting better, the claimant was still experiencing "constant mild to moderate diffuse lower back pain which was sharp and tingling in quality." Dr. Kassim's June 24, 2005, medical record notes that the claimant's "lower back pain has remained unchanged."

¶ 11    The employer presented the evidence deposition of Charles Anderson, the employer's operations manager. Anderson testified that the claimant called in sick on July 14, 15, and 16 2008, and left a message stating that he was having "sciatic nerve problems due to a motorcycle ride." The claimant testified that he spoke with his employer on July 16, 2008, and reported that he had hurt his back while loading cars at work. However, when asked on cross-examination "[i]f the note or Mr. Anderson *** would testify that you called him and told him you were having sciatic nerve problems due to a motorcycle ride and you need to be off a couple days[,] would that be incorrect?" the claimant responded "I am not—I don't recall that. It could be and I don't remember because we are talking two and a half or three years ago." The claimant admitted that he rode his motorcycle approximately 250 miles to Wisconsin and back on July 12, 2008.

¶ 12    The arbitrator found that the claimant had failed to prove that he sustained an accident that arose out of and in the course of his employment on July 21, 2008. The arbitrator concluded that the claimant "would be considered a traveling employee from when he arrives at [the employer's] terminal, loads his vehicle, delivers his vehicles to a destination, and returns to the terminal." However, the arbitrator found that "lifting an overnight bag is not sufficient to put [the claimant] in the course of his employment." In support of this finding, the arbitrator cited our supreme court's decision in *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38 (1987). Summarizing the supreme court's holding in *Orsini*, the arbitrator noted that (1) "[f]or an injury to have arisen out of the employment, the risk of injury must be a risk peculiar to the work or a risk to which the employee is exposed to a greater degree than the general public by reason of his employment"; and (2) "[i]f the injury results from a hazard to which the employee would have been equally exposed apart from the employment, then it does not arise out of [the employment]."

¶ 13    The arbitrator also found that, "[e]ven arguing that the [claimant's] activity was 'arising out of' [his employment], *** the [claimant] failed to prove that the low back condition at the time of this alleged injury was causally connected to a lifting incident on July 21, 2008." The arbitrator noted that "the medical records, the [claimant's] testimony, and the testimony of Chuck Anderson persuade the Arbitrator to find that [the claimant's] low back symptoms were causally connected to activities outside of his employment." Accordingly, in addition to his finding that the injuries the claimant suffered on July 21, 2008, did not arise out of and in the course of his employment, the arbitrator also specifically found that "the [claimant] failed

to prove that the injuries he sustained on July 21, 2008, if any, were causally connected to his employment with [the employer]." The arbitrator denied benefits.

¶ 14    The claimant appealed the arbitrator's decision to the Commission. The claimant disputed both the arbitrator's finding that he failed to prove an accident arising out of and in the course of his employment and the arbitrator's finding of no causal connection. Regarding the accident issue, the claimant argued that he was a "traveling employee" because his job required him to travel. Accordingly, he was acting in the course of his employment from the moment he left his house, not merely from the time he arrived at the employer's Belvidere terminal. Moreover, the claimant argued that his injury arose out of his employment under a traveling employee analysis because it was reasonable and foreseeable that he would load a bag into his car in preparation for his upcoming work trip. Regarding the causation issue, the claimant argued that: (1) the employer had stipulated that the claimant's current condition of ill-being is causally connected to the injury he suffered on July 21, 2008; and (2) the claimant "established his burden of proof regarding causation based upon a chain of events theory."

¶ 15    The Commission unanimously affirmed and adopted the arbitrator's decision. The Commission expressly noted that it had considered the issues of "accident" and "causal connection," among other issues. Although the Commission did not separately comment on the arbitrator's causation finding, it explained its finding on the accident issue as follows:

"The Commission separately notes that *** [the claimant] admits that his accident occurred when he lifted his personal suitcase into his personal vehicle–[the claimant] had not left his home at the time of the accident. The risk of injury in this case was a personal risk, and was not sufficiently connected with the employment in order to be a risk peculiar to his work. [The claimant's] travel for work had not yet begun when the accident occurred."

¶ 16    The claimant then sought judicial review of the Commission's decision in the circuit court of Winnebago County. Although the claimant asked the circuit court to reverse the Commission's decision "in its entirety," his petition for administrative review expressly referenced only the Commission's finding that the accident did not arise out of and in the course of his employment. The employer's response brief in the circuit court addresses that issue only and does not ask the court to affirm the Commission's finding of no causal connection. The circuit court affirmed the Commission's decision. The circuit court's order discusses only the traveling employee issue (*i.e.*, the "arising out of" issue) and does not address the causation issue. This appeal followed.

¶ 17                                    ANALYSIS

¶ 18    The issue raised by the parties to this appeal is whether the lower back injury that the claimant suffered on July 21, 2008, arose out of and in the course of his employment. Whether a claimant's injury arose out of or in the course of his employment is typically a question of fact to be resolved by the Commission, and the Commission's determination will not be reversed unless it is against the manifest weight of the evidence. *Kertis v. Illinois Workers' Compensation Comm'n*, 2013 IL App (2d) 120252WC, ¶ 13; *Cox v. Illinois Workers' Compensation Comm'n*, 406 Ill. App. 3d 541, 546 (2010). However, when the facts are undisputed and susceptible of but a single inference, as in this case, the question is one of law subject to *de novo* review. *Kertis*, 2013 IL App (2d) 120252WC, ¶ 13; *Joiner v. Industrial Comm'n*, 337 Ill. App. 3d 812, 815 (2003).

¶ 19    An employee's injury is compensable under the Act only if it arises out of and in the course of the employment. 820 ILCS 305/2 (West 2008). " 'The general rule is that an injury incurred by an employee in going to or returning from the place of employment does not arise out of or in the course of the employment and, hence, is not compensable.' " *The Venture—Newberg-Perini, Stone & Webster v. Illinois Workers' Compensation Comm'n*, 2013 IL 115728, ¶ 16 (quoting *Commonwealth Edison Co. v. Industrial Comm'n*, 86 Ill. 2d 534, 537 (1981)). The rationale for this rule is that that the employee's trip to and from work is the product of his own decision as to where he wants to live, a matter in which his employer ordinarily has no interest. *The Venture—Newberg-Perini, Stone & Webster*, 2013 IL 115728, ¶ 16.

¶ 20    An exception applies, however, when the employee is a "traveling employee." *Id.* ¶ 17. A "traveling employee" is one whose work duties require him to travel away from his employer's premises. *Id.*; see also *Kertis*, 2013 IL App (2d) 120252WC, ¶ 16. Courts generally regard traveling employees differently from other employees when considering whether an injury arose out of and in the course of employment. *The Venture—Newberg-Perini, Stone & Webster*, 2013 IL 115728, ¶ 17; *Hoffman v. Industrial Comm'n*, 109 Ill. 2d 194, 199 (1985). A traveling employee is deemed to be in the course of his employment from the time that he leaves home until he returns. *Kertis*, 2013 IL App (2d) 120252WC, ¶ 16; *Mlynarczyk v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120411WC, ¶ 14; *Cox*, 406 Ill. App. 3d at 545. An injury sustained by a traveling employee arises out of his employment if he was injured while engaging in conduct that was reasonable and foreseeable, *i.e.*, conduct that "might normally be anticipated or foreseen by the employer." (Internal quotation marks omitted.) *Robinson v. Industrial Comm'n*, 96 Ill. 2d 87, 92 (1983); see also *Kertis*, 2013 IL App (2d) 120252WC, ¶ 16; *Cox*, 406 Ill. App. 3d at 545-46.

¶ 21    Whether a traveling employee was injured while engaging in conduct that was reasonable and foreseeable to his employer is normally a factual question to be resolved by the Commission, and where the facts or inferences are in dispute, we should affirm the Commission's determination unless it is against the manifest weight of the evidence. *Kertis*, 2013 IL App (2d) 120252WC, ¶ 17. However, where the relevant facts and inferences are undisputed, as here, we review this issue *de novo*. *Id.*; see generally *Joiner*, 337 Ill. App. 3d at 815.

¶ 22    In this case, the claimant argues that he is a traveling employee. It is undisputed that his job duties required him to travel away from his employer's premises at the Belvidere terminal to deliver cars to various dealerships and that he typically stayed overnight at a motel from one to two nights per week while he was traveling for work. What is less clear is whether the claimant was traveling for work at the time of his injury. An injury suffered by a traveling employee is compensable under the Act if the injury occurs while the employee is traveling for work, *i.e.*, during a work-related trip. However, the work-related trip at issue must be more than a regular commute from the employee's home to the employer's premises. Otherwise, every employee who commutes from his home to a fixed workplace owned or controlled by his employer on a daily basis would be deemed a "traveling employee," and the exception for traveling employees would swallow the rule barring recovery for injuries incurred while traveling to and from work. Thus, the threshold question in this case is: had

the claimant embarked on a work-related trip at the time he was injured on July 21, 2008, or was he merely beginning his regular commute to his employer's premises at that time?

¶ 23    The claimant argues that his work accident occurred in the course of his employment because he was injured after he had left his home and begun his work-related trip. In support of this argument, the claimant relies principally on our decisions in *Mlynarczyk* and in *Complete Vending Services, Inc. v. Industrial Comm'n*, 305 Ill. App. 3d 1047 (1999). We will address each of these cases in turn.

¶ 24    In *Mlynarczyk*, the employer operated a cleaning service. The claimant and her husband worked for the employer cleaning churches, homes, and offices in various locations. The claimant "did not work at a fixed jobsite." *Mlynarczyk*, 2013 IL App (3d) 120411WC, ¶ 16. The employer gave the claimant and her husband a minivan to use while driving to various jobs and for personal purposes. *Id.* ¶ 4. On the date of the claimant's injury, the claimant and her husband drove the minivan to clean a church and two homes. After they finished (at approximately 2:30 p.m.), the employer told them that, if they were interested in assisting the evening crew on another job, they should return to the church at approximately 4:30 p.m. *Id.* ¶ 5. The claimant and her husband returned home and had lunch. Shortly after 4 p.m., the claimant left her house to return to work. As she walked around the rear of the minivan, which was parked in the driveway of the home where she and her husband resided, the claimant slipped and fell, fracturing her wrist. The claimant testified that the accident occurred adjacent to the driveway on a " 'public sidewalk' " leading from the house to the driveway. *Id.* ¶ 6. The employer did not rebut this testimony. We held that the claimant was a traveling employee. *Id.* ¶ 16. Applying the special rules applicable to traveling employees, we held that the claimant's injury occurred in the course of her employment because the injury occurred "after she left home, while walking to a vehicle used to transport her to work." *Id.* ¶ 19. Moreover, we held that the conduct leading to the injury was "reasonable and foreseeable" because: (1) the claimant testified that the accident occurred "as she was walking to the vehicle used to transport her to a work assignment for [the employer]"; and (2) the claimant's walk to the minivan "constituted the initial part of her journey to her work assignment." *Id.*

¶ 25    The employer argued that, even if the claimant was a traveling employee, her injury was not compensable "because she had not left her private property when the injury occurred and therefore had not yet been subjected to the hazards of the street or an automobile." *Id.* ¶ 20. In rejecting this argument, we held that "the evidence does not support the premise that claimant's fall occurred on private property" because the claimant's unrebutted testimony established that the accident occurred on a " 'public sidewalk.' " We found this testimony sufficient to establish that the accident "exposed [the] claimant to the hazards of the street." *Id.* Moreover, we noted that the employer had cited no authority in support of its claim that a traveling employee who has "left the physical confines of his or her home on the way to a job assignment" and sustained an accident on private property cannot be subject to the hazards of the street. *Id.*

¶ 26    In *Complete Vending Services*, we held that an employee who was injured while driving from his home to his employer's office en route to an off-site service call was a traveling employee whose injury arose out of and in the course of his employment. *Complete Vending Services*, 305 Ill. App. 3d at 1050. The claimant worked for the employer as a service technician. He was on call 24 hours a day, 7 days a week, 365 days a year to repair the

employer's vending machines in his designated service area. *Id.* at 1048. When he was not out on service calls, his duties included repairing vending machines and rebuilding equipment in one of the employer's shops. *Id.* The claimant drove a company vehicle to and from work and for all service calls. The employer paid for gas and the claimant was not allowed to use the vehicle for any personal uses. *Id.* The night before the accident, the employer's answering service contacted the claimant and informed him that Central Du Page Hospital needed a machine fixed. *Id.* The next morning, the claimant left home in the company vehicle. His intention was to "stop in at the [employer's] office on the way to Du Page Hospital to tell [the employer] where he was going and to see if any other service calls had come in that he could make while [he was] out." *Id.* at 1048-49. The office was directly on the route to the hospital. On the way to the office, the claimant rear-ended a garbage truck and suffered injuries.

¶ 27    We held that the Commission's finding that the claimant's injuries arose out of and in the course of his employment was not against the manifest weight of the evidence for two separate and independent reasons: (1) the claimant was a traveling employee who was injured after he left his home "with the intention of making the service call" even though he had decided to "stop in" at the office first, which was on the way to the service call, for the employer's benefit; and (2) the employer provided the claimant with a means of transportation to or from work for the employer's own benefit. *Id.* at 1049-50. In so holding, we rejected the dissenting commissioner's opinion that the claimant was not a traveling employee at the time of the accident because the claimant's commute to the office the morning of the accident was "no different from any other employee's commute to work or, for that matter, the claimant's regular commute to work" and the claimant therefore "encountered *** risks which were no greater than those encountered by the general public each day traveling to and from work." *Id.* at 1050-51.

¶ 28    The claimant argues that *Mlynarczyk* and *Complete Vending Services* support his claim in this case. He contends that, like the claimant in *Mlynarczyk*, he had left his home and was injured while approaching the vehicle that he would use to drive to work. Moreover, like the claimant in *Complete Vending Services*, the claimant planned to stop at the employer's premises (the Belvidere terminal) en route to a job at a different location. In essence, the claimant argues that, like the injuries at issue in *Mlynarczyk* and *Complete Vending Services*, his injury occurred during the first leg of a continuous work trip to a distant job location away from the employer's premises. Moreover, because he was a traveling employee, the claimant argues that he was acting in the course of his employment from the time he left his home until the time he returned home, regardless of whether he stopped at the employer's premises in the interim. He notes, correctly, that the fact that he was injured while loading his personal car, rather than a company car, is irrelevant to the traveling employee analysis.[3]

---

[3]The fact that an employer provides an employee with a company car demonstrates that the employer "provide[d] [the claimant with] a means of transportation to or from work for the employer's own benefit." *Complete Vending Services*, 305 Ill. App. 3d at 1049. That constitutes a separate exception to the general rule that an accident occurring while an employee is traveling to or from work does not arise out of or in the course of his employment. *Id.* By contrast, the "traveling employee" exception is predicated on entirely different facts, namely, facts demonstrating that the employee's job duties required him to travel away from the employer's premises. See, *e.g.*, *The Venture—Newberg-Perini, Stone & Webster*, 2013 IL 115728, ¶ 16.

Thus, the claimant argues that the Commission erred as a matter of law in finding that his injury did not occur in the course of his employment.

¶ 29 We disagree. Even assuming that the claimant had "left home" at the time of his injury, (which is not entirely clear), he was preparing to begin his *regular commute* to his employer's premises at that time. Unlike the claimants in *Mlynarczyk* and *Complete Vending Services*, the claimant in this case did not drive to his various work locations directly from his home; rather, he was required to drive to the employer's Belvidere facility first, load an 18-wheeler truck with cars located at the employer's facility, and then drive the truck to various dealerships from there. Thus, when he drove to the Belvidere terminal, he was not making a brief and unnecessary stop at his employer's premises that was directly en route to his ultimate work destination (as was the claimant in *Complete Vending Services*). Rather, he was making a regular commute to a fixed jobsite as a necessary precondition to any subsequent work-related travel. This fact also distinguishes the claimant in this case from the claimant in *Mlynarczyk*, who had "no fixed job site" and who traveled directly from her home to the various homes and churches that she cleaned. Unlike the claimants in *Mlynarczyk* and *Complete Vending Services*, the claimant's trip to the Belvidere facility was not part of a continuous trip from his home to a jobsite away from the employer's premises.[4] Nor was the claimant injured during a trip from his employer's premises to a distant work location (as in *Kertis* and other cases) or during a trip from a remote jobsite to his home (as in *Cox*). Rather, the claimant was injured during a regular commute from his home to his employer's premises, before he embarked upon a work trip away from his employer's premises. Thus, the Commission's finding that the claimant's injury did not arise out of or in the course of his employment was not against the manifest weight of the evidence.

¶ 30 Because we uphold the Commission's decision on this basis, we do not need to address whether the action the claimant was performing while he was injured was reasonable and foreseeable to the employer or whether the Commission erred in finding that the claimant failed to prove causation.

¶ 31                                    CONCLUSION

¶ 32 For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County, which confirmed the Commission's decision.

¶ 33 Affirmed.

---

[4]Moreover, *Mlynarczyk* is distinguishable for the additional reason that the injury in *Mlynarczyk* occurred on a " 'public sidewalk' " in front of the claimant's house, thereby exposing the claimant to the "hazards of the street." *Mlynarczyk*, 2013 IL App (3d) 120411WC, ¶ 20. Further, we note that our holding in *Mlynarczyk* was based on a unique set of facts that is unlikely to recur.