469 A.2d 466

Nancy Lee MILLER

v.

The JOHNS HOPKINS HOSPITAL.

No. 316, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Jan. 9, 1984.

Certiorari Denied May 28, 1984.

Joseph F. Zauner, III, with whom were Rochlin & Settleman, P.A., Baltimore, on brief, for appellant.

William H. Hicks, with whom were Niles, Barton & Wilmer, Baltimore, on brief, for appellee.

Argued before GILBERT, C.J., and LISS and ADKINS, JJ.

GILBERT, Chief Judge.

Nancy Lee Miller, appellant, while a nurse at The Johns Hopkins Hospital, was enroute to work when she was sexually assaulted. Because she believed that assault to have occurred within the course of her employment, she filed a claim under the Workmen's Compensation Act. Md.Ann. Code Art. 101. The Workmen's Compensation Commission agreed with Ms. Miller and awarded her four weeks temporary total disability. The Circuit Court for Baltimore City (Greenfeld, J.) reversed the Commission's order and entered summary judgment in favor of the hospital.

Chagrined at the circuit court's entry of judgment against her, Ms. Miller has carried her cause to us.

The "Award of Compensation" as passed by the Commission adequately sets out the relevant facts:

"The incident took place on the Orleans Street Service Drive [a public street] near the place of employment shortly before 7:00 AM on March 12, 1981. This area is one of a number near the hospital which is served by a motorized escort service during peak, or shift change, hours. The escort service is operated by the contract security provider to the hospital and benefits hospital employees, University employees, patients and visitors alike. Hospital employees are not required to utilize the service.

Additionally, there exists between Johns Hopkins University and the Baltimore City Police Department a unique Agreement and Memorandum of Understanding which incorporates, by reference, a letter from the Director of General Services for Johns Hopkins Hospital. Under this Agreement, city police officers are employed and paid by Johns Hopkins University to provide additional street patrols beyond those usually provided by the police. These patrols are conducted in the areas and at the times directed by the hospital security provider. The Agreement specifically states that 'Hopkins' will provide compensation coverage to those members of the police

department employed. The letter attached to the Agreement as an exhibit makes clear the concern of the hospital over its ability to attract, and retain nursing employees and medical students in particular due to the incidence of crimes against persons. Hence, the Agreement. It is clear that although not so stated in the Agreement, that the pay of the officers comes from the Hospital, though possibly furnished through the University."

■ Ordinarily, employees who are injured while "going or coming" from their place of employment are not embraced within the ambit of the Workmen's Compensation Law. *Wiley Manufacturing Co. v. Wilson,* 280 Md. 200, 206, 373 A.2d 613, 616 (1977); *Kendall Lumber Co. v. State,* 132 Md. 93, 103 A. 141 (1918). This is so because the employee's injuries do not arise "out of or in the course of" his or her employment. *Wiley Manufacturing Co. v. Wilson,* 280 Md. at 206, 373 A.2d at 616. Going to or from work is not the same as being on the job, and unless there is some agreement, practice, or custom to the contrary, employers are not responsible for portal-to-portal pay or workmen's compensation coverage. M.J. Pressman, *Workmen's Compensation in Maryland,* (Michie 1977) § 2–6(8).

There are circumstances when, of course, the employee may be covered by workmen's compensation even though not on the premises, as for example, where transportation to and from work is provided by the employer. *Western Electric Co. v. Engleman,* 13 Md.App. 374, 283 A.2d 437 (1971); *Watson v. Grimm,* 200 Md. 461, 467, 90 A.2d 180, 183 (1952); *Tavel v. Bechel Corp.,* 242 Md. 299, 304, 219 A.2d 43, 46 (1966).

The courts, however, have carved from the general rule several exceptions. One is styled as the "proximity rule," the other, the "premises rule." The former is but a geographical extension of the area of the latter.

■ The premises rule applies when an employee is injured on the premises of the employer and while going to or from his or her job. *Wiley Manufacturing Co. v. Wilson,*

*supra; Proctor-Silex Corp. v. DeBrick,* 253 Md. 477, 252 A.2d 800 (1969). An "extension" of the premises rule has been invoked,

"where the employee is injured while traveling along or across a public road between two portions of his employer's premises, whether going or coming, or pursuing the actual duties of his employment. A typical application of this exception occurs where injury is sustained by an employee while traveling between a company parking lot and his employer's plant. . . ." *Wiley Manufacturing Co. v. Wilson,* 280 Md. at 206, 373 A.2d at 616.

See *Proctor-Silex v. DeBrink, supra;* 1 Larson, *Workmen's Compensation Law* (1982) § 15.14 and § 15.41.

Inasmuch as the injuries in the matter *sub judice* were not occasioned in the hospital, on its grounds, or on a public street that separated two portions of the hospital, or while traveling between a hospital parking lot and the hospital, further discussion of the premises rule is unwarranted.

We now turn our discussion to the proximity or "special hazard" extension of the premises rule.

It is apparent from the Commission's recitation of facts that the hospital had experienced some difficulty in obtaining and retaining personnel. The difficulty was caused by the incidents of crime that occurred in the surrounding neighborhood. To make employment at Hopkins more attractive, the hospital engaged the services of a security agency. With consent of the then Baltimore City Police Commissioner, off-duty police officers patrolled the public streets adjacent to the hospital.[1] Simultaneously, a motorized van was driven over designated routes for the purpose of collecting hospital personnel and visitors and delivering them to the hospital's various facilities.

Ms. Miller arrived in the vicinity of the hospital too late to make connection with the hospital's van. After she had

---

[1] From the record we glean that the officers were paid by The Johns Hopkins University.

parked her vehicle and alit from it onto the street, she was accosted and forced back into her vehicle where she was attacked.

■ Ms. Miller contends here, as she did before the Commission and the circuit court, that by providing patrols and transportation in the form of the van, the hospital extended its premises so that the proximity rule is applicable.

The proximity rule, according to Judge Levine in *Wiley,* "had its genesis in two widely cited Supreme Court cases, *Cudahy Co. v. Parramore,* 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923) and *Bountiful Brick Co. v. Giles,* 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928)." Both cases involved construction of the Utah Workmen's Compensation statute. As has been the situation in numerous proximity rule cases, both arose out of railroad crossing accidents. Parramore was struck while driving his automobile across the railroad track. The road on which he was traveling at the time was described as the "only practicable way of ingress and egress for employees" and "was the way customarily used." *Bountiful* concerned a pedestrian who was struck while crossing a railroad track. The route across the track could have been avoided by taking a circuitous and inconvenient course. Bountiful knew that its employees used the shortcut across the tracks, but it did not instruct them not to use it. The Court said that since Bountiful acquiesced in the use of the shortcut across the railroad, the risks incurred by the employee were "incidental to the employment and became annexed as an implied term" of that employment.

A host of cases concerning the proximity rule have been decided by the Court of Appeals and this Court. *See e.g. Wiley Manufacturing Co. v. Wilson, supra; Saylor v. Black & Decker Manufacturing Co.,* 258 Md. 605, 267 A.2d 81 (1970); *Proctor-Silex Corp. v. DeBrick, supra; Salomon v. Springfield Hospital,* 250 Md. 150, 242 A.2d 126 (1968); *Tavel v. Bechtel Corp.,* 242 Md. 299, 219 A.2d 43 (1966); *Pariser Bakery v. Koontz,* 239 Md. 586, 212 A.2d 324 (1965); *Maryland Paper Products Co. v. Judson,* 215 Md. 577, 139

A.2d 219 (1958); *Sparrow v. Louis Dreyfus Corp.,* 49 Md. App. 564, 433 A.2d 1227 (1981); *Carter v. M.V. Construction Corp.,* 47 Md.App. 169, 422 A.2d 44 (1980); *Rambo v. International Dry Wall Co. Inc.,* 44 Md.App. 693, 410 A.2d 627 (1980), *cert. denied,* 287 Md. 751, 753 (1980); *Pappas v. Modern Manufacturing Co.,* 14 Md.App. 529, 287 A.2d 798, *cert. denied,* 265 Md. 741 (1972).

A distillation of those cases divulges that each case must be decided on its own facts. *Wiley Manufacturing Co. v. Wilson,* 280 Md. at 211, 373 A.2d at 619.

What may be safely said, however, is that the "proximity rule is identified with those cases involving accidents which occur at a point where the employee is within range of dangers peculiarly associated with employment." *Wiley Manufacturing Co. v. Wilson,* 280 Md. at 208, 373 A.2d at 617. The two guidelines pronounced by 1 Larson, *supra* at § 15.00 are:

1) the existence of a special hazard at the particular off-premises point where the incident took place;

2) the propinquity between the access route and the premises of the employer.

This State's two appellate courts have consistently declined to apply the proximity exception to events that occurred on public property. *Salomon v. Springfield Hospital, supra; Pariser Bakery v. Koontz,* supra; *Maryland Paper Products Co. v. Judson, supra; Stoskin v. Board of Education of Montgomery County,* 11 Md.App. 355, 274 A.2d 397 (1971). Nevertheless, what we must consider in the instant case is whether the hospital's attempt through security patrols to assure safe ingress and egress of employees, visitors, and patients extends the proximity rule to public streets. We think it does not.

While it is unfortunate that Ms. Miller was assaulted on the streets of Baltimore City, such assaults do occur there, as well as in other cities throughout the country. The situation that confronted Ms. Miller could be faced by any woman on any street at any time. There was no "special hazard" with

respect to hospital employees because visitors and patients entering or leaving the hospital are subjected to the same risks. That the hospital's location, with its attendant pedestrian traffic, might attract hoodlums, criminals, thugs, and persons of similar ilk does not create any more of a special hazard than does Harbor Place, Memorial Stadium, the Civic Center, the Convention Center, or other hospitals which also attract large crowds of people. Simply because the hospital sought to throw a protective cover of sorts over the area adjacent to it does not extend the premises of the hospital. An effort to be of public service, even though motivated by some degree of self-interest, does not convert the hospital into an insurer of the safety of persons on the public streets surrounding the hospital.

Were we to hold that the hospital's act in providing additional security patrols in the area adjacent to the hospital was a unilateral extension of its premises, thus rendering it liable for injuries sustained by employees through acts of third persons, we would in effect discourage any other employer from providing a similar service. In sum, we would, figuratively speaking, strip from such employees the protection they now receive.

We observe that the hospital does provide, at a cost, a parking lot. Employees are not required to use that lot, but they may not hold the hospital responsible for injuries sustained because of its non-use.

> As Judge Greenfeld commented in the circuit court, "Even though the ... [hospital] provided extra security patrols, crime prevention in that area was still the primary responsibility of the ... [Baltimore City Police Department]."

It follows from what we have said, that the trial judge did not err in granting summary judgment to the hospital. There was, in the instant case, no genuine dispute of a material fact and, as a matter of law, judgment should have been granted.

.

JUDGMENT AFFIRMED.
COSTS TO BE PAID BY APPELLANT.