770 A.2d 1064

**GLOBE SCREEN PRINTING CORPORATION, et al.**

v.

**John J. YOUNG.**

**No. 117, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

April 25, 2001.

124

Angus R. Everton (Alan M. Carlo and Morgan, Shelsby, Carlo, Downs & Everton, P.A. on the brief), Hunt Valley, for appellants.

Mark C. Miller (William J. Blondell, Jr., Chartered on the brief), Baltimore, for appellee.

Argued before DAVIS, DEBORAH S. EYLER and KRAUSER, JJ.

KRAUSER, Judge.

This appeal arises out of the Workers' Compensation claim of John J. Young, appellee, for injuries he sustained from an assault that occurred on a public sidewalk between his place of employment, Globe Screen Printing Corporation, and its employee parking lot. Because of the location of that assault, appellee claimed that his injuries were covered by the Maryland Workers' Compensation Act [1] ("Act") under the "premises" or "proximity" exceptions to the going and coming rule.

Following a hearing on that claim, the Workers' Compensation Commission ("Commission"), without specifying the

---

1. Md.Code (1999 Repl.Vol., 2000 Supp.), §§ 9–101 to 9–1201 of the Lab. & Empl. Article.

grounds for its decision, found that appellee had sustained an accidental injury arising out of and in the course of his employment.[2] It therefore concluded that appellee's injuries were compensable under the Act. Thereafter, Globe Screen Printing Corporation ("Globe") and its insurer, Centennial Insurance Company/Atlantic Companies, appellants, filed a petition for judicial review in the Circuit Court for Baltimore City.

Because the facts were not in dispute, the parties filed cross-motions for summary judgment. At the motions hearing that followed, the circuit court affirmed the order of the Commission and entered summary judgment in favor of Young, on the ground that, under the "proximity" exception to the going and coming rule, appellee's injuries arose out of and in the course of his employment with Globe. From that order, Globe and its insurer noted this appeal.

The only issue before this Court is whether either the "premises" exception or the "proximity" exception to the going or coming rule is applicable to the circumstances of this case. Because we find that neither exception is, we conclude that

---

**2.** Although the Commission found that appellant's injuries "arose out of and in the course of" employment, we note, that under the facts of this case, the Act requires only that appellant's injuries occur "in the course of" employment to be compensable. "The words [arises] 'out of' refer to the cause or origin of the accident, while the phrase 'in the course of' relates to the time, place and circumstances under which it occurred." *King Waterproofing Co. v. Slovsky,* 71 Md.App. 247, 251–52, 524 A.2d 1245 (1987). Section 9–501 of the Act states in part that "each employer of a covered employee shall provide compensation in accordance with this title to: (1) the covered employee for an accidental personal injury sustained by the covered employee...." Section 9–101(b) defines "accidental personal injury" as:

(1) an accidental injury that arises out of and in the course of employment;
(2) *an injury caused by a willful or negligent act of a third person directed against a covered employee in the course of the employment of the covered employee* .... (Emphasis added.)

Because appellant's injuries resulted from an assault by third parties, his claim falls under § 9–101(b)(2). That section requires only that the injuries occur "in the course of" employment to be compensable under the Act. *May Dept. Stores v. Harryman,* 307 Md. 692, 517 A.2d 71 (1986); *Giant Food, Inc. v. Gooch,* 245 Md. 160, 225 A.2d 431 (1967).

appellee's injuries did not occur in the course of his employment. Therefore, his injuries are not compensable under the Act. Accordingly, we shall reverse the judgment of the circuit court.

## FACTS

Appellee, John J. Young, was employed by appellant, Globe Screen Printing Corporation, as a shipping manager. Although his "normal working hours" were from 8:30 a.m. to 5:00 p.m., he had obtained permission from his employer, the year before, to start work much earlier so that he could return home in the early afternoon to care for his sick mother.

The building that houses Globe is in Baltimore City. It is bounded by three public streets: Hollins Street on the North, Poppleton Street on the West, and Boyd Street on the South. The main entrance to Globe is on Hollins Street; an employee entrance is on Poppleton Street and another is on Boyd Street. Boyd Street is thirty feet wide, seventeen feet of which are paved. A parking lot maintained by Globe for the benefit of its employees lies on the other side of Boyd Street, opposite the Boyd Street entrance to the building.

Because appellee walked to work, he did not use the employee parking lot. Each morning, he left his home on Ramsay Street and usually walked down Pratt Street, turning left onto Poppleton and then right onto Boyd Street. He would then enter the building, using the Boyd Street entrance. His key to the building "as far as [he knew]" only opened the Boyd Street entrance. Upon arriving, he would turn off the alarm and open up the shipping and receiving department, which was on the Boyd Street side of the building.

On May 18, 1998, the day of the assault, appellee left his home at 2:20 a.m., to walk to work. While walking along Poppleton Street, he noticed a group of men looking at him from across that street. As he reached the corner of Boyd and Poppleton Streets, he turned right onto Boyd Street and took out his keys to unlock the entrance door. Approximately fifteen feet from the entrance, he was attacked by the group of

men that had been watching him. At the time of that attack, he was standing on a public sidewalk.

After being stabbed in the arm by one of the men, he ran back to Poppleton Street. There, he was pushed up against a car by his assailants and stabbed twice in the abdomen. The attack ended when a neighbor screamed at the men to get off of appellee. Moments later, the police arrived, and appellee was rushed to the University of Maryland Shock Trauma Center where he was treated for multiple stab wounds.

## DISCUSSION

Appellants contend that the facts of this case fall within neither the "premises" nor the "proximity" exceptions to the going and coming rule. They assert therefore that, as a matter of law, appellee's injuries did not occur in the course of his employment and, accordingly, are not compensable under the Maryland Workers' Compensation Act. We agree.

The decisions of the Commission are "presumed to be prima facie correct." § 9–745(b)(1). In reviewing a decision of the Commission, we must determine whether it "(1) justly considered all of the facts about the accidental personal injury . . .; (2) exceeded the powers granted to it under this title; or (3) misconstrued law and facts applicable in the case decided." § 9–745(c). A Commission ruling may be reversed "only upon a finding that its action was based upon an erroneous construction of the law or facts." *Frank v. Baltimore County,* 284 Md. 655, 658, 399 A.2d 250 (1979). "Notwithstanding the deferential treatment of the Commission's decision, a reviewing court has broad authority and may reverse the Commission's decision when it is based on an erroneous conception of the law." *Board of County Comm'rs v. Vache,* 349 Md. 526, 533, 709 A.2d 155 (1998). For the reasons set forth below, we find that the circuit court, and by implication the Commission,[3] erroneously construed and ap-

---

**3.** In awarding appellee compensation for his injuries, the Commission did not specify upon which exception—"premises" or "proximity"—to

plied the "proximity" exception to the going and coming rule in this case. Also, we find no merit to appellee's contention that the "premises" exception applies to the facts of this case.

The Act provides compensation for accidental personal injuries "caused by a willful or negligent act of a third person directed against a covered employee in the course of the employment of the covered employee." § 9–101(b)(2). Injuries that are sustained by employees going to or coming from work are not covered by the Act unless they fall within a recognized exception. *Morris v. Board of Educ.*, 339 Md. 374, 380, 663 A.2d 578 (1995); *Alitalia Linee Aeree Italiane v. Tornillo*, 329 Md. 40, 44, 617 A.2d 572 (1993). The reason is that the Act "contemplates an employee engaged in a service growing out of his employment. An employee who is merely going to or coming from his work is not rendering any such service. He is therefore exposed to the hazards encountered on such trips, not as an employee, but rather as a member of the general public." *Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 206, 373 A.2d 613 (1977) (citing *Tavel v. Bechtel Corp.*, 242 Md. 299, 303, 219 A.2d 43 (1966); *Rumple v. Henry H. Meyer Co.*, 208 Md. 350, 357, 118 A.2d 486 (1955)). Moreover, "getting to work is considered to be an employee's responsibility and ordinarily does not involve advancing the employer's interest." *Morris*, 339 Md. at 380, 663 A.2d 578.

In support of his claim that his injuries are compensable under the Act, appellant relies on two exceptions to the going and coming rule: the "premises" exception and the "proximity" exception. The premises exception "is usually invoked where the employee is injured while traveling along or across a public road between two portions of his employer's premises, whether going or coming, or pursuing the actual duties of his employment." *Wiley*, 280 Md. at 206, 373 A.2d 613. "A typical application of this exception," according to the *Wiley* court, "occurs where injury is sustained by an employee while

the going and coming rule it was relying. For the purposes of this opinion, we shall assume it relied upon both.

traveling between a company parking lot and his employer's plant." *Id.* But " 'if the parking lot is a purely private one, the principle of passage between two parts of the premises is not available, and an employee crossing a public street to get to the parking lot is not protected.' " *Board of County Comm'rs,* 349 Md. at 533, 709 A.2d 155 (quoting *Proctor–Silex Corp. v. DeBrick,* 253 Md. 477, 482–83, 252 A.2d 800 (1969)) (quoting 1 Larson, Workmen's Compensation Law, § 15.14 (1968)). The reasoning underlying this exception is:

> Since . . . a parking lot owned or maintained by the employer is treated by most courts as part of the premises, the majority rule is that an injury in a public street or other off-premises place between the plant and the parking lot is in the course of employment, being on a *necessary* route between the two portions of the premises. . . .

*Wiley,* 280 Md. at 206–07, 373 A.2d 613 (quoting 1 Larson, *supra* ).

■ When appellee was assaulted, he was on his way to work. At the time of the assault, he was neither on Globe's premises nor traveling between the company parking lot and his place of employment. In fact, he had not yet arrived at work and was attacked while on a public sidewalk. Although that assault occurred between his place of employment and the employee parking lot, that happenstance does not bring the facts of this case within the ambit of the premises exception.

Appellee argues, however, that since the "premises" exception would be applicable to an employee attacked at the same location as appellee if he or she was coming from the employee lot, appellee should not be denied the protection of that exception simply because he was coming from home. In other words, since both individuals would have been injured at the same location, right outside their place of employment, they should be treated, according to appellee, the same for the purposes of compensation benefits. Merely because appellee had chosen to walk to work and not avail himself of the use of

the employee parking lot, appellee argues, should not be a basis for granting or denying such benefits.

In essence, appellee is asking us to extend the scope of the premises exception beyond its present limits without providing a rationale for doing so except the unacceptability, in appellee's eyes, of the results. The premises exception was created in recognition of the fact that a parking lot provided by an employer for employees is by its very nature an integral part of the premises of that employer's business and that any street or other area that lies between the lot and business is " 'a necessary route between [those] two portions of the premises.' " *Wiley,* 280 Md. at 207, 373 A.2d 613 (quoting 1 LARSON, *supra* ). Therefore, an injury sustained by an employee while using that street or other area to travel between the two is an injury sustained " 'in the course of employment.' " *Id.* The focus of that exception therefore is not, as appellee claims, where an employee's injury occurred but whether that injury occurred while that employee was walking from one portion of his or her employer's premises (the employer-provided parking lot) to another (the plant, office building, shop, etc.). To suggest that it unfairly distinguishes between those employees who choose to walk and those who choose to drive and use the company lot misses the point. The premises exception is not intended to extend an employer's liability to the public sidewalks and streets around his building but to make an employer responsible for injuries that employees may sustain as they travel between a parking lot, selected for their use by their employer, and their place of employment. Indeed, " 'by establishing or sponsoring a parking lot not contiguous to the working premises, the employer has created the necessity for encountering hazards lying between these two portions of the premises.' " *Jaeger Baking Co. v. Kretschmann,* 96 Wis.2d 590, 292 N.W.2d 622, 628 (1980) (quoting 1 LARSON, WORKER'S COMPENSATION LAW § 15.12 (1978)). Of course, the logic of this rationale collapses when we attempt to apply it to public sidewalks or streets over which an employer has no control and for which it has no responsibility.

Moreover, if we were to expand the premises exception as urged by appellee, we would begin a process whereby that exception would eventually swallow the going and coming rule:

It is a familiar problem of law, when a sharp, objective, and perhaps somewhat arbitrary line has been drawn ... to encounter demands that the line be blurred a little to take care of the closest cases.

This, however, only raises a new problem without solving the first.... [E]ach time the premises are extended a 'reasonable distance,' there will inevitably arise new cases only slightly beyond that point, and the cry of unfairness of drawing distinctions based on only a few feet of distance once more will be heard.

1 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 13.01(2)(a) (2000).

Appellants further contend that the circuit court erred in finding that the facts of the instant case fall within the ambit of the "proximity" exception to the going and coming rule. In granting summary judgment to appellee, the circuit court stated:

I am going to affirm the decision of the Commission. And I am going to affirm it based upon the conclusion that *the location was so situated as to make the customary and only practical way of immediate ingress and egress one of a hazard because of the alley and the passage.* I will grant the motion of the claimant and deny the motion of the employer saying that it's a very, very close case. (Emphasis added.)

The "proximity" or "special hazard" exception has "two vital components": " '[t]he first is the presence of a special hazard at the particular off-premises point.' " *Wiley,* 280 Md. at 208, 373 A.2d 613 (quoting 1 LARSON, LAW OF WORKMEN'S COMPENSATION § 15.13 (1972)). A special hazard is a " 'danger peculiarly or to an abnormal degree beyond that to which the general public [is] subjected....' " *Id.* at 209, 373 A.2d 613 (quoting *Pariser Bakery v. Koontz,* 239 Md. 586, 591, 212 A.2d 324 (1965)). " 'The second is the close association of

the access route with the premises....'" *Id.* (quoting 1 LARSON, *supra* ). In sum, " '... The gravamen of the [proximity exception] is not that the employee is in close proximity to his place of employment, but rather that by reason of such proximity the employee is subjected to danger peculiarly or to an abnormal degree beyond that to which the general public was subjected....'" *Id.* (quoting *Pariser Bakery,* 239 Md. at 591, 212 A.2d 324). Both components must be satisfied for the "proximity" exception to apply. *Board of County Comm'rs,* 349 Md. at 537, 709 A.2d 155.

In *Wiley,* the Court of Appeals held that injuries that "two co-workers sustained while taking a shortcut along a railroad right of way to a company parking lot, located some 790 feet from the entrance to their place of employment, arose 'out of and in the course of' their employment." *Wiley,* 280 Md. at 202, 373 A.2d 613. The two workers were "walk[ing] up the main line tracks of the Penn Central Railroad" in the direction of the parking lot, where one of them had parked his car, when they "were struck from the rear by a northbound train." *Id.* at 203, 373 A.2d 613. The Court reasoned:

> [T]he employees here were injured while taking a hazardous route—albeit one which was significantly more dangerous, but not substantially more convenient than an alternative means of egress—in close proximity to their place of employment. Additionally, employees had traveled the same route regularly and customarily for at least several years with what amounted to the implied consent of their employer. Finally, there was peculiar and abnormal exposure to a hazard beyond that to which the general public was subjected. In these circumstances, the proximity rule supports recovery under the Workmen's Compensation Act.

*Id.* at 217–18, 373 A.2d 613.

In explaining why the hazard in question met the "special hazard" requirement of the proximity exception, the *Wiley* Court stressed that the route taken by employees was not "one which also would be used by a member of the general public." *Id.* at 217, 373 A.2d 613. Indeed, "no one but an

employee would likely travel from the plant to the employee's parking lot." *Id.*

▮ In contrast to *Wiley,* appellee was walking down a public sidewalk when he was injured, not an isolated set of train tracks used only by employees taking a shortcut to a nearby parking lot. Indeed, no evidence was presented that Boyd Street was used only by Globe employees or even principally by them.

Furthermore, unlike in *Wiley,* where the employer knew that his employees were taking this dangerous route to their cars, there is no indication in the record that appellee's employer knew that Young was walking to work. Appellee did testify that his key, as far as he knew, only worked at the Boyd Street entrance. But how he reached this conclusion is never explained by him or any other witness. We therefore do not know whether he ever attempted to use his key at any other entrance.

Moreover, the railroad tracks used by the employees in *Wiley* were active. There were "[a]pproximately 30 trains . . . [using] the tracks on a daily basis." *Wiley,* 280 Md. at 203, 373 A.2d 613. "Some of these trains," the Court pointed out, "included 100 cars or more." *Id.* Anyone walking in that right of way was "peculiar[ly]" and "abnormal[ly]" exposed to "a hazard beyond that to which the general public was subjected." *Id.* at 217–18, 373 A.2d 613. In contrast, an employee of appellant using the Boyd Street sidewalk was in no greater danger than any member of the public would have been using that sidewalk or any other in Baltimore. Moreover, no evidence was adduced that that location had a greater crime problem than any other location in the city.

Although the streets of any urban area can be dangerous, particularly early in the morning, they do not necessarily present a "special hazard," as this Court observed in *Miller v. Johns Hopkins Hospital,* 57 Md.App. 135, 469 A.2d 466 (1984). In that case, we once again "declined to apply the proximity exception to events that occur on public property." *Id.* at 141, 469 A.2d 466. In *Miller,* a female nurse, while enroute to

work, was sexually assaulted after parking her car on a public street near her place of employment. Even though the area was dangerous enough for her employer to provide "security patrols to assure safe ingress and egress of employees," *id.,* we declined to find that she was exposed to a "special hazard." In doing so, we explained: "The situation that confronted Ms. Miller could be faced by any woman on any street at any time." *Id.; see also Pariser Bakery,* 239 Md. at 591, 212 A.2d 324 (The proximity exception was inapplicable when an employee was hit by a car on a public sidewalk adjacent to his workplace because "the danger which caused his injury was not a regular or frequent one to which his employment exposed him to a greater degree than was the general public."). Yet, in the instant case, appellee asks us to find a special hazard in the absence of any evidence indicating that the incidence or severity of crime in the area around Globe was greater than in any other part of the city. We are assured by appellee that "common sense dictates" that Boyd Street posed a special hazard because of its narrow, secluded alley-like dimensions. We disagree.

To begin with, we note that Boyd Street is hardly an "alley." An "alley," as defined by at least one authoritative lexicographer, is "a lane wide enough only for persons on foot: a narrow street wide enough for only one vehicle." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Philip Babcock Gove et al. eds., 1967). Boyd street is thirty feet wide, seventeen of which are paved, according to appellee. Consistent with those dimensions, a photograph introduced into evidence by appellee at the summary judgment hearing shows two cars parked on both sides of that street. Street lights are also present as well as sidewalks on both sides of the street. In sum, Boyd Street, though narrower than the other streets bounding Globe's building, did not present a "peculiar and abnormal exposure to a common peril beyond that to which the general public was subjected." *Wiley,* 280 Md. at 215, 373 A.2d 613.

Finally, because we find that appellee was not exposed to a "special hazard," we need not engage in a lengthy analysis of the second component of the proximity rule, "the close associa-

tion of the access route with the premises," other than to observe that appellee was very close to his place of employment when attacked. We do note, however, that "[t]he gravamen of [the proximity rule] is not that the employee is in close proximity to his place of employment, but rather that by reason of such proximity the employee is subjected to danger peculiarly or to an abnormal degree beyond that to which the general public was subjected." *Pariser Bakery*, 239 Md. at 591, 212 A.2d 324.

We hold therefore, as a matter of law, that because the "premises" and "proximity" exceptions to the going and coming rule are not applicable to the facts of this case, appellee's injuries did not occur in the course of his employment. Accordingly, the circuit court erred in granting summary judgment in favor of appellee and in implicitly affirming the Commission's decision.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY, WITH INSTRUCTIONS TO ENTER SUMMARY JUDGMENT FOR APPELLANTS.**

**COSTS TO BE PAID BY APPELLEE.**