788 A.2d 210

**Allen HENVILLE**

v.

**SOUTHWEST AIRLINES, INC. et al.**

**No. 2542, Sept.Term, 2000.**

Court of Special Appeals of Maryland.

Jan. 2, 2002.

Cynthia E. Young, Annapolis, for appellant.

Jeffrey C. Herwig, Baltimore, for appellees.

Argued before JAMES R. EYLER, ADKINS, and KRAUSER, JJ.

KRAUSER, Judge.

This Workers' Compensation appeal demands that we once again consider where the boundaries of the "premises" and "proximity" exceptions to the going and coming rule lie. Specifically, it requires us to determine whether an airport parking lot, neither owned, maintained, or designated for parking by the employer airlines, falls within the former exception and whether the fence, enclosing that lot, which from time to time is climbed by some going to and from work, falls within the latter.

Appellant, Allen Henville, an employee of appellee, Southwest Airlines, Inc., was injured when, upon leaving work, he attempted to climb over a four-foot fence that enclosed the lot, in which he and his wife had parked their car. The entrance to that lot lay a half mile away and was serviced by a shuttle bus. To this interesting mixture of facts, we add that the lot in question was not one of those provided by Southwest for its employees. It was a state-owned lot, officially designated "Lot A," to which his wife had parking privileges, as a state employee, and at which appellant was lawfully parked.

Following his fall, appellant filed a claim under the Workers' Compensation Act ("Act") against appellee Southwest and its insurer, appellee Reliance National Indemnity, asserting that he had sustained an accidental injury arising out of and in the course of his employment. Specifically, he claimed that because the injury occurred between Lot A and his place of employment, it fell within the "premises" and "proximity" exceptions to the going and coming rule and was therefore covered by the Act.[1]

Following a hearing on that claim, the Workers' Compensation Commission ("Commission"), found that appellant had not sustained an accidental injury arising out of and in the course of his employment. It therefore concluded that appellant's injuries were not compensable under the Act. Thereafter, appellant filed a petition for judicial review in the Circuit Court for Anne Arundel County.

In response to that petition, appellees filed a motion for summary judgment. At the motions hearing that followed, the circuit court affirmed the order of the Commission and entered summary judgment in favor of appellees, on the ground that, under the "premises" exception [2] and "any of the

---

1. Md. Code (1999 Repl. Vol., 2000 Supp.), §§ 9–101 to 9–1201 of the Labor & Employment Article.

2. Although the circuit court did not expressly state that appellant had failed to meet the requirements of the "premises" exception, we conclude from the circuit court's analysis and the case law cited by that court (i.e., May Department Stores Co. v. Harryman, 307 Md. 692, 517

other exception[ ] to the going and coming rule," appellant's injuries did not arise out of and in the course of his employment with Southwest. From that order, appellant noted this appeal.

The only issue before this Court is whether appellant's claim falls within the "premises" exception or the "proximity" exception to the going and coming rule. Because we find appellant's claim does not fall within either exception, we conclude that appellant's injuries did not arise out of and in the course of his employment. Therefore, his injuries are not compensable under the Act. Accordingly, we shall affirm the judgment of the circuit court.

### Facts

On June 1, 1999, appellant, Allen Henville, a baggage handler for appellee, Southwest Airlines, Inc., and his wife, a state employee, drove in her car to the Baltimore—Washington International Airport where they both worked. Southwest is located in Terminal C of that airport and its employees have parking privileges at satellite lots A, B, and C. On that day, however, appellant's wife parked in Lot A, a restricted "authorized vehicles only" lot, adjacent to the main terminal of that airport where appellant's wife, as a state employee, had parking privileges. Lot A, like all of the parking lots and facilities at the airport, is owned by the Maryland Aviation Administration ("MAA").

Although appellant had no parking privileges at Lot A, his wife, as noted, did. Moreover, appellant was not prohibited from parking at that lot because he was an employee of Southwest Airlines and the vehicle he was driving had the proper sticker affixed to it. In fact, MAA permitted its employees to lend their parking spaces to other airport employees as the need arose. For example, Mr. Keen,[3] director

---

A.2d 71 (1986)(discussing the "premises" exception)), that that is what the court found.

**3.** Neither the record nor the parties' briefs disclose Mr. Keen's first name.

of transportation for the MAA, apparently permitted his secretary to park in his spot when he was away on vacation. And, according to Mr. Keen, another Southwest employee was using her boyfriend's spot in that lot.

On June 1, 1999, appellant began his shift at Terminal C, the location of Southwest. At 12:22 a.m. the next day, appellant "punched out" leaving the lower level of Terminal C through a rear entrance. A co-employee then drove appellant in a Southwest truck around the perimeter of Terminals A, B, and C on airport service roads to Lot A, where his wife had parked earlier. Lot A was enclosed by a four-foot high fence; its main entrance was approximately one-half mile from the terminal of the airport. Rather than walk or take a shuttle to the main entrance of Lot A, appellant attempted to climb over the fence. Unfortunately, as he began his climb, his foot slipped, causing him to fall and fracture his left leg.

## DISCUSSION

Appellant contends his injury falls within the "premises" and "proximity" exceptions to the going and coming rule. Therefore, appellant asserts that his injury did arise out of and occur in the course of his employment and, accordingly, is compensable under the Maryland Workers' Compensation Act ("Act"). We disagree.

Before addressing the merits of appellant's claim, however, we must first place them in the context of the Act. To do that, we must review the applicable portions of the Act and define the terms of the Act that are relevant to this analysis. The section of the Act that bears directly on appellant's claim of coverage states that "each employer of a covered employee shall provide compensation in accordance with this title to: (1) the covered employee for an accidental personal injury sustained by the covered employee...." Md. Code (1999 Repl. Vol., 2000 Supp.), § 9–501(a)(1) of the Labor & Employment Article ("L.E."). The Act defines "[a]ccidental personal injury [as]:

(1) an accidental injury that arises out of and in the course of employment;

(2) an injury caused by a willful or negligent act of a third person . . .; or

(3) a disease or infection . . . that arises out of and in the course of employment. . . ."

L.E. § 9–101(b).

Because appellant's injuries obviously did not result from the "willful or negligent act of a third person" or "a disease or infection," his claim falls under L.E. § 9–101(b)(1). That section requires that for an injury to be compensable, it must occur both "aris[ing] out of and in the course of employment." "The words 'out of' and 'in the course of' employment . . . are not synonymous; and both must be satisfied by the claimant. . . ." *Pariser Bakery v. Koontz*, 239 Md. 586, 590, 212 A.2d 324 (1965); *Whiting–Turner Contracting Co. v. McLaughlin*, 11 Md.App. 360, 361, n. 1, 274 A.2d 390 (1971); *Kletz v. Nuway Distribs.*, 62 Md.App. 158, 162, 488 A.2d 978 (1985). "The words 'out of' refer to the cause or origin of the accident, while the phrase 'in the course of' relates to the time, place and circumstances under which it occurred." *King Waterproofing Co. v. Slovsky*, 71 Md.App. 247, 251–52, 524 A.2d 1245 (1987)(citing *Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 205, 373 A.2d 613 (1977); *Mack Trucks, Inc. v. Miller*, 23 Md.App. 271, 272, 326 A.2d 186 (1974), *aff'd*, 275 Md. 192, 338 A.2d 71 (1975)).

As to the appropriate standard of review, we note that the decisions of the Commission are "presumed to be prima facie correct. . . ." L.E. § 9–745(b)(1). Nonetheless, we are required to determine whether the Commission "(1) justly considered all of the facts about the accidental personal injury . . .;(2) exceeded the powers granted to it under this title; or (3) misconstrued the law and facts applicable in the case decided." L.E. § 9–745(c). A Commission ruling may be reversed "upon a finding that its action was based upon an erroneous construction of the law or facts. . . ." *Frank v. Baltimore County*, 284 Md. 655, 658, 399 A.2d 250 (1979)(cit-

ing *Maryland Bureau of Mines v. Powers,* 258 Md. 379, 382, 265 A.2d 860 (1970)). Indeed, "[n]otwithstanding the deferential treatment of the Commission's decision, a reviewing court has broad authority and may reverse the Commission's decision when it is based on an erroneous conception of the law." *Board of County Comm'rs v. Vache,* 349 Md. 526, 533, 709 A.2d 155 (1998).

■ It is well settled that injuries that are sustained by employees going to or coming from work are not covered by the Act unless they fall within a recognized exception. *Morris v. Board of Educ.,* 339 Md. 374, 380, 663 A.2d 578 (1995); *Alitalia Linee Aeree Italiane v. Tornillo,* 329 Md. 40, 44, 617 A.2d 572 (1993). The reason is that the Act "contemplates an employee engaged in a service growing out of his employment. An employee who is merely going to or coming from his work is not rendering any such service.. He is therefore exposed to the hazards encountered on such trips, not as an employee, but rather as a member of the general public." *Wiley Mfg. Co.,* 280 Md. at 200, 373 A.2d 613 (citing *Tavel v. Bechtel Corp.,* 242 Md. 299, 303, 219 A.2d 43 (1966); *Rumple v. Henry H. Meyer Co.,* 208 Md. 350, 357, 118 A.2d 486 (1955)). Moreover, "getting to work is considered to be an employee's own responsibility and ordinarily does not involve advancing the employer's interest." *Morris,* 339 Md. at 380, 663 A.2d 578 (citing *Oaks v. Connors,* 339 Md. 24, 32, 660 A.2d 423 (1995)).

■ Nonetheless, appellant claims that his injuries are compensable under the Act. In support of that claim, he relies on two exceptions to the going and coming rule: the "premises" exception and the "proximity" exception. The "premises" exception is usually invoked·

> where the employee is injured while traveling along or across a public road between two portions of his employer's premises, whether going or coming, or pursuing the actual duties of his employment. A typical application of this exception, according to the Court of Appeals, occurs where injury is sustained by an employee while traveling between a company parking lot and his employer's plant. . . .

*Wiley,* 280 Md. at 206, 373 A.2d 613. On the other hand, " 'if the parking lot is a purely private one, the principle of passage between two parts of the premises is not available, and an employee crossing a public street to get to the parking lot is not protected.' " *Vache,* 349 Md. at 533, 709 A.2d 155 (quoting *Proctor–Silex Corp. v. DeBrick,* 253 Md. 477, 482–83, 252 A.2d 800) (quoting 1 LARSON, WORKMEN'S COMPENSATION LAW, § 15.14 (1968)).

The reasoning underlying this exception is:

Since . . . a parking lot owned or maintained by the employer is treated by most courts as part of the premises, the majority rule is that an injury in a public street or other off—premises place between the plant and the parking lot is in the course of employment, being on a *necessary* route between the two portions of the premises. . . .

*Vache,* 349 Md. at 533, 709 A.2d 155 (quoting *Wiley,* 280 Md. at 206–07, 373 A.2d 613) (quoting 1 LARSON, LAW OF WORKMEN'S COMPENSATION, § 15.14 (1972)).

■ Although appellant's fall did occur between his place of employment and an employee parking lot, his claim does not fall within the ambit of the "premises" exception. The parking lot where appellant had parked and was walking to when his injury occurred was neither owned nor maintained by his employer for the benefit of Southwest employees. Indeed, there was no evidence that appellant's employer even knew he was using that lot instead of the satellite lots that had been provided for the use of Southwest employees.

Yet, appellant, relying principally on *May Department Stores Company v. Harryman,* 307 Md. 692, 517 A.2d 71 (1986), maintains that the "premises" exception is applicable to the facts of his case. In *May,* an employee of a mall department store parked her car in a parking lot provided by the mall. After getting out of her car, she was mugged and injured on the lot. While the parking lot was not owned, controlled, or maintained by the May Department Stores Company, it was provided by the mall for all of the employees and customers of the mall's tenants.

The *May* Court began its analysis by quoting the following language from Larson's, § 15.42(a):

As to parking lots owned by the employer, or maintained by the employer for his employees, the great majority of jurisdictions consider them part of the 'premises,' whether within the main company premises or separated from it. This rule is by no means confined to parking lots owned, controlled, or maintained by the employer. The doctrine has been applied when the lot, although not owned by the employer, was exclusively used, or used with the owner's special permission, or just used, by the employees of this employer. Thus, if the owner of the building in which the employee works provides a parking lot for the convenience of all his tenants, or if a shopping center parking lot is used by employees of businesses located in the center, the rule is applicable.

*Id.* at 696, 517 A.2d 71 (quoting 1 LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 15.42(a) (footnotes omitted)).

Then, after observing that "multi-tenanted shopping centers are a special type of working environment," the Court of Appeals quoted *Frishkorn v. Flowers,* 26 Ohio App.2d 165, 167, 270 N.E.2d 366 (1971), on the absurdity of excluding injuries that occurred on parking lots shared by many businesses from coverage under the "premises" exception:

It would be impractical and illogical to apply this principle to a shopping plaza consisting of multiple independent businesses, each of which would have to be an owner in common with all the other tenants in order to share a nebulous control over its geographical confines and stimulate a joint zone of employment.

\* \* \*

In the instant case [*Frishkorn*], the parking area was appellant's *normal and customary* means to and from his employer's premises to which such passageway was an indispensable appurtenance. In reality, the employer and the other tenants of the Great Northern Shopping Center, having reciprocal rental rights and privileges, were also

accorded the common use and access of the parking area. Logically, to that extent, this was tantamount to an essential expansion of their respective premises for the purpose of adequately serving and furthering their business interests. *It follows that the appellant-employee, as well as the employees of the other tenants, derived their similar rights and privileges from the shopping center by virtue of a vested privity in the objectives of their employers.* (Citations omitted)(emphasis added).

*May Department Stores Company,* 307 Md. at 697–98, 517 A.2d 71.

Concluding that in such instances the employer's premises included parking lots not owned or maintained by the employer, the Court found in *May* that the employee was covered by the Act under the "premises" exception to the going and coming rule.

"Like the parking area at a shopping mall," appellant argues (unconstrained by the conventional rules of grammar), "employees at the airport are entitled (albeit for a fee) to use the parking facilities," including Lot A, so long as they have a parking sticker affixed to their vehicle. Rounding out that analogy, appellant points out that although Lot A "is not under the control of the employer," it is "as in a mall situation, . . . under the control of the employer's landlord—in this case the Maryland Aviation Authority." Therefore, appellant implies, the lot in question was part of his employer's premises and thus his injury fell within the "premises" exception. While an airport with multiple employers may in the broadest terms bear a superficial resemblance to a shopping mall with multiple tenants, we are unpersuaded that *May's* expansion of the "premises rule" to mall parking lots is applicable to here.

In *May,* the plaintiff parked in a mall parking lot provided for employees and business invitees of the mall. While the parking lot was not owned, controlled, or maintained by the May Department Stores Company, it was a parking lot provided for all of the employees and customers of the shopping mall's tenants. Indeed, it was the "normal and customary

means" by which employees went to and from their employers' premises and thus the "passageway was an indispensable appurtenance." *May Department Stores,* 307 Md. at 697, 517 A.2d 71 (quoting *Frishkorn,* 26 Ohio App.2d at 167, 270 N.E.2d 366). In contrast to *May,* it was not the "normal and customary" practice of Southwest employees to use Lot A to go to and from Southwest. Rather, the "normal and customary" practice of Southwest employees was to park their vehicles in the lots provided for their use—satellite parking lots A, B or C. As the circuit court explained: "I think that the difference [between *May* and the instant case] is that the case we have before us, all the parking lots are not open to all the employees of all the stores, which we would call the tenants of the airport in this case. They distinctly made lots restricted. Only certain people can park in certain lots. And this particular lot is one of those restricted lots." We agree.

To find Southwest liable under the Act for an accidental injury at a parking lot not "provided by" Southwest would be an unwarranted expansion of the "premises" rule. As noted by this Court in *Globe Screen Printing v. Young,* 138 Md.App. 122, 770 A.2d 1064 (2001), the "premises exception was created in recognition of the fact that a parking lot *provided by* an employer for employees is by its very nature an integral part of the premises of that employer's business...." *Id.* at 131, 770 A.2d 1064 (emphasis added). There, we held that the mere fact that an accidental injury "occurred between [plaintiff's] place of employment and the employee parking lot, that happenstance [alone] does not bring the facts of this case within the ambit of the premises exception." *Id.* at 130, 770 A.2d 1064.

We further note that no evidence was adduced nor any claim made that Southwest had any responsibility for or control over Lot A or in the issuance of permits to park there. Indeed, as admitted by appellant in his testimony before the Commission, appellant, by virtue of his employment alone, would not have been able to park in or otherwise gain access to the parking lot. Nor was there any evidence that Southwest knew that its employees parked there. Rather, as noted,

the parking area provided for Southwest employees was in satellite parking lots A, B or C. For these reasons, we believe appellant failed to satisfy the requirements of the "premises" exception of the going and coming rule.

■ Appellant further contends that the circuit court erred in finding that the facts of the instant case did not fall within the ambit of the "proximity" exception to the going and coming rule. The "proximity" or "special hazard" exception has "two vital components: '[t]he first is the presence of a special hazard at the particular off-premises point.'" *Wiley*, 280 Md. at 208, 373 A.2d 613 (citations omitted). A special hazard is a "danger peculiarly or to an abnormal degree beyond that to which the general public [is] subjected...." *Id.* at 209, 373 A.2d 613 (quoting *Pariser Bakery v. Koontz*, 239 Md. 586, 591, 212 A.2d 324 (1965)). "The second is the close association of the access route with the premises...." *Wiley*, 280 Md. at 208, 373 A.2d 613 (quoting 1 LARSON, LAW OF WORKMEN'S COMPENSATION, § 15.13 (1972)). In sum, " '[t]he gravamen of [the "proximity" exception] is not that the employee is in close proximity to his place of employment, but rather that by reason of such proximity the employee is subjected to danger peculiarly or to an abnormal degree beyond that to which the general public was subjected....' " *Wiley*, 280 Md. at 209, 373 A.2d 613 (quoting *Pariser Bakery*, 239 Md. at 591, 212 A.2d 324). Both components must be satisfied for the "proximity" exception to apply. *Vache*, 349 Md. at 538, 709 A.2d 155 (1998).

In *Wiley*, the Court of Appeals held that injuries sustained by "two co-workers while taking a shortcut along a railroad right of way to a company parking lot, located some 790 feet from the entrance to their place of employment, arose 'out of and in the course of' their employment...." *Wiley*, 280 Md. at 202, 373 A.2d 613. The two workers were "walk[ing] up the main line tracks of the Penn Central Railroad in the direction of the north parking lot," where one of them had parked his car, when they "were struck from the rear by a northbound train...." *Id.* at 203, 373 A.2d 613. The employees there

"were injured while taking a hazardous route—albeit one which was significantly more dangerous, but not substantially more convenient than an alternative means of egress—in close proximity to their place of employment." *Id.* at 217, 373 A.2d 613.

In holding that the employees were covered by the "proximity" exception despite the existence of a less dangerous route, the *Wiley* court stressed that the more dangerous route selected by the employees was a route which they and their fellow employees had used for years and that the defendant employer, by failing to take any measures to halt that practice, had impliedly consented to it. Although appellant claimed that other employees had climbed over the fence in question, he did not assert that this practice was common among the employees of Southwest or that it had gone on for years with the implied consent of Southwest. Appellant only testified that "a lot of the guys from United and other airlines jump over [the fence] to go to their cars;" he did not specify that that included employees of Southwest or that Southwest knew or should have known about that practice.

Furthermore, the fence did not pose a special hazard, a " 'danger peculiarly or to an abnormal degree beyond that to which the general public [is] subjected . . . .' " *Wiley,* 280 Md. at 209, 373 A.2d 613 (quoting *Pariser Bakery,* 239 Md. at 591, 212 A.2d 324). On that point, we find *Corcoran v. Fitzgerald Bros.,* 239 Minn. 38, 58 N.W.2d 744 (1953), particularly instructive.

In *Corcoran,* a construction worker was employed by a contractor to assist in the construction of a new building. To protect the construction equipment at the building site, the contractor erected a ten-foot high fence around the site. At the northeast and southwest corners of that fence, gates were provided for ingress and egress.

At the close of work one day, the plaintiff found the northeast gate of the fence locked. Rather than walk around to the southwest corner of the fence, the plaintiff attempted to scale the northeast side of the fence "to save himself the walk

... [of] a distance of about 3½ or 4 ordinary blocks." *Corcoran*, 58 N.W.2d at 745 (1953). In holding that the plaintiff's accident did not arise out of and in the course of employment the court reasoned:

> It is common knowledge that a ten-foot fence, erected as was the one in this case, is there for the purpose of preventing ingress or egress at the places where it is located. The employer provided a safe means of egress; the employee had used that exit the previous night and knew that it was there. When he unnecessarily chose to climb over the fence to save himself a comparatively short walk, it cannot be said that the injury sustained in so doing arose out of his employment.

*Id.* at 746.

As in *Corcoran*, it was common knowledge that the four-foot fence surrounding Lot A was for the purpose of restricting ingress and egress into that lot, which, as noted earlier, was restricted to state employees with minor exceptions. *Corcoran*, 58 N.W.2d at 745. Rather than use a "safe means of egress"—a one-half mile walk or shuttle ride to the lot's entrance—appellant chose to climb over a four-foot high fence surrounding the lot. When he did so, he unnecessarily exposed himself to risks that were of his own making and were neither known of nor approved by his employer. There were risks, as in *Corcoran*, which did not arise out of his employment. Because the fence did not create a special hazard to those who sensibly observed its purpose, appellant failed to satisfy the first "component" of the "proximity" rule: " 'the presence of a special hazard at the particular off-premise point.' " *Wiley*, 280 Md. at 208, 373 A.2d 613 (citation omitted). We therefore need not address the second component of the "proximity" rule, "the close association of the access route with the premises," other than to observe that appellant was close to his place of employment when injured. We repeat, however, that " '[t]he gravamen of [the "proximity" rule] is not that the employee is in close proximity to his place of employment, but rather that by reason of such proximity the employee is subjected to danger peculiarly or to an abnormal degree

beyond that to which the general public was subjected. . . .'"
*Wiley,* 280 Md. at 209, 373 A.2d 613 (quoting *Pariser Bakery,*
239 Md. at 591, 212 A.2d 324).

Consequently, we hold that because the "premises" and
"proximity" exceptions to the going and coming rule are not
applicable to the facts of this case, appellant's injuries did not
arise out of and in the course of his employment. According-
ly, the circuit court properly granted summary judgment in
favor of appellees.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**